(Decided 14th January, 1892.)

FREDERICKA C. NICKEL, Executrix of CHRISTIAN G. NICKEL *vs.* STEWART BROWN, Surviving Trustee.

*Deeds—Leasehold estates—When title Passes—Registration.*

Under section 1 of Article 21 of the Code, which provides that "no estate of inheritance or freehold, * * * or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged, and recorded," leasehold estates for ninety-nine years, do not pass so as to relieve the grantor from the payment of arrears of rent and taxes, until the deeds conveying such estates have been duly executed, acknowledged and recorded.

APPEAL from the Court of Common Pleas.

This action was brought by the appellee against the appellant to recover certain ground rents and taxes. The opinion of this Court, together with the opinion of Judge DUFFY in the lower Court, furnish a sufficient statement of the facts of the case.

*First and Second Exceptions,* relating to questions of evidence, are omitted, not having been passed upon by the Court.

Nickel *vs.* Brown.

*Third Exception.* The plaintiff offered the following prayers:

1. That if the jury find from the evidence that Stewart Brown, as surviving trustee under the will of Granville S. Oldfield, deceased, was the owner of the reversion and ground-rent in and to the three lots of ground on Fulton avenue, Baltimore, mentioned in the evidence; and if they shall further find, that Christian G. Nickel became in his life-time the owner of the leasehold interest mentioned in the declaration and in the evidence, under the deed from Sarah Robinson and her husband, offered in evidence, and dated the 15th day of February, 1886, and that the said defendant, Fredericka C. Nickel, was the executrix of her said husband, and took out letters testamentary on his estate on the 5th of February, 1889, and that the ground-rent falling due on the first day of July, 1889, and the ground-rent falling due on the first day of January, 1890, on said three lots mentioned in the evidence, was due to the plaintiff, and has not been paid, and that the taxes for the year 1889, were not paid by the defendant, but were paid by the plaintiff; and if they further find that no assignment by the defendant of the leasehold interest in said three lots was recorded prior to the institution of this suit, then the plaintiff is entitled to recover in this suit.

2. That if the jury shall find for the plaintiff under the first prayer, the measure of damage is the amount of ground-rent they shall find to be due upon the three lots mentioned in the evidence up to and including the 1st of January, 1890, with interest on the same from the time they respectively became due and payable, and likewise the amount of taxes on said lots for the year 1889, with interest thereon from the time the same were paid by the plaintiff.

The defendant offered the following prayers:

1. The defendant prays the Court to instruct the jury, that upon the pleadings in this cause there is no legally

sufficient evidence of privity of estate between the plaintiff and the defendant, to entitle the plaintiff to recover, and their verdict must be for the defendant.

2. That if the jury believe that the deeds or conveyances of the Fulton avenue property, mentioned in the testimony, were executed by the defendant to Sarah E. Scott, before the 6th day of February, 1890, and afterwards recorded, and shall further find that the plaintiff, before the said 6th day of February, 1890, had notice of the said conveyances, then their verdict must be for the defendant, even though they shall find that the said conveyances were not recorded until the 18th day of June, 1890.

3. If the jury believe that the deeds or conveyances of the Fulton avenue property, mentioned in the testimony, were executed by the defendant to Sarah E. Scott, before the 6th day of February, 1890, and afterwards recorded, and that the said Sarah E. Scott, or some one in her behalf, or acting under her, took possession of the property before the said 6th day of February, 1890, then their verdict must be for the defendant, even though they shall find that the said conveyances were not recorded till the 18th day of June, 1890.

The Court (DUFFY, J.,) granted the prayers of the plaintiff, and rejected those of the defendant, and delivered the following opinion:

"The question involved here is one of great importance. There are only some two or three hundred dollars involved, but that is a mere trifle compared with the importance of the legal question. I have thought a great deal of the case, and I see that this question is full of difficulties, and one that admits of a good deal of argument on both sides. The best conclusion that my mind can come to I will now give.

"When a tenant of a piece of property is not the original lessee, but is an assignee, that tenant is responsible

for the covenants in the lease, for the payment of rent, etc., only during the time that he holds the legal title to the property, that is, responsible only in a Court of law; and during all the time that he does hold the legal title to the property he is responsible for the rent. The covenants are his covenants during that time.

"This suit was brought on the 6th of February, 1890. On that day the landlord was entitled to rent under the lease. He was entitled to six months rent which fell due on the first of January, a month before he brought his suit, and he was entitled to six months rent which fell due on the first of July before that, seven months before he brought his suit. So that on the day he brings his suit the landlord is certainly entitled to his rent, and, certainly, on that day, somebody owes him. Well, who owes him? Who owes him in a Court of law? The tenant, who is the assignee of the property, the assignee in law of the property, on that day, is the one that owes that rent.

"A person to whom the equitable title of the leasehold property belongs on that day, no matter how extensive the equity may have been, although he may have been a purchaser from the tenant who made a contract to convey the property to him upon demand, and he had paid the tenant the full price of it, so that in every point of view the purchaser was the absolute owner of that property, excepting as to the legal title, is not responsible, because he does not have the legal title, and you cannot sue anybody in a Court of law except the one who has the legal title.

"Therefore upon the 6th of February, 1890, Mrs. Scott, the defendant's assignee, could not have been sued; she didn't owe the rent on that day, because it is conceded she did not have the legal title to the property. If the deed was signed and executed, and delivered even, before that day, it would not have made any difference,

because, as it is perfectly well settled, the deed did not operate, no deed so operates, as an effective deed to convey a legal title until it is recorded. Now, on the 6th of February, 1890, when the suit was brought, we have, first, the plaintiff is entitled to rent from some debtor; second, that debtor is the defendant, because at that time the legal title stood in her name upon the records, there being no conveyance on record to Mrs. Scott,· even if it was already executed. Then, on the 6th of February, when the suit was brought, the status of the case was this: The plaintiff, to the extent of the rent and taxes, the amount of which is not disputed, was a creditor, and the debtor to the creditor was this defendant. Now, that was the actual state of these parties in a Court of law when this suit was brought. The plaintiff then, under that state of case, is entitled to recover, unless there is something in the Act of Assembly which, by an act done after this suit was brought, retroacts and cuts out the creditor from a claim which was due to that creditor before that time. So, we will have, after all, to get down to the real question in this case, and which is not involved in any of these cases that have been cited, whether or not there is any such Act of Assembly.

"Now, it is said that this section in the conveyancing law which makes a deed go back when once recorded, retroact and become effective from the time of its date, operates to cut out a claim in this manner. The first one is as follows:

" 'Every deed of real property, when acknowledged and recorded as herein directed, shall take effect as between the parties thereto from its date.' Article 21, section 14 of the Code.

" 'No deed of real property shall be valid for the purpose of passing title unless acknowledged and recorded as herein directed.' Section 15. Well, now, how are deeds acknowledged and recorded 'as herein directed?''

The only place where they are directed to be recorded is in the thirteenth section, which says: 'Every deed of any of the interests or estates mentioned in the first section of this article shall be recorded within six months from its date.' So that, in these two sections we have read, the fourteenth and fifteenth, in order that the deed may take effect as between the parties thereto from its date, it must be recorded within six months. This deed was not recorded within eight, or ten months, being dated in September and not recorded until the June following, June, 1890. So this deed cannot be set up as having the effect that is called upon for it to have, if you look to these two sections alone. The fourteenth being the one upon which the defendant principally relies. If you want to get at the retroactive effect of this deed in this case, therefore, you must go to some other section in this law. Now, notice this fourteenth section says, 'When acknowledged and recorded as herein directed'—that is, within six months—'shall take effect as between the parties thereto from its date.' How take effect? 'As between the parties thereto,' against the parties thereto; in favor of the parties thereto; one of them against the other; one of them in his own favor. It takes effect between the parties for all the purposes that such a deed can be used as a deed. It takes effect as between the parties, for each one of them, and against each one of them.

"Now the next sections which have anything to do with the question are the nineteenth, twentieth and twenty-first. The nineteenth: 'Any deed or conveyance of or relating to land, duly acknowledged and required by law to be recorded, except deeds or conveyances by way of mortgages, may be recorded after the time herein prescribed.' Now, this is the class of deeds that *may* be recorded. The previous sort of deeds, the time of their recording was directed; they were ordered to be recorded. We all know it is the policy of the land laws of our

12                    v. 75.

State that all these matters should go upon record, for the information of everybody, and so nobody shall be harmed—'And when so recorded shall have (leaving out now two or three sentences) the same validity and effect as if recorded within the time herein prescribed.' That is to say, when they are recorded they shall have the same effect as if recorded within the six months. If recorded after six months, with this language and no other, they would relate back to their date, just as the first set of deeds would relate back. But that isn't all. This section says: 'They shall have the same validity and effect as if recorded within the time herein prescribed'—all the effects previously given about relating back, and everything else; but they shall have that effect as against the grantor, not in favor of the grantor, as is sought to be done here, but they shall have the same effect, that is, all this going back, as against the grantor, not as it was in the previous section, that they shall take effect as between the parties thereto, which would make it against each party and in favor of each party, but here they shall have this effect spoken of in the previous section, 'as against the grantor, his heirs or executors, and against all purchasers, with notice of such deed or conveyance, and against all creditors of such grantor and his heirs, who shall become so after the recording of such deed or conveyance.' Who is the creditor of the grantor here? Anyone who became such after the recording of the deed or conveyance? I have already shown that upon the sixth of February the plaintiff here was a creditor of the defendant here. Now, this section says: 'When so recorded shall have, as against all creditors of such grantor, who shall become so after the recording of such deed or conveyance, the same validity and effect,' etc. Well, the natural implication of that would be that it does not take effect, in that way, as against creditors who became such *before*

Nickel *vs.* Brown.

the recording of such deed or conveyance. This section does not *say* that, but the language would intimate that, and such is the object of this section, as it is in conformity with all the rest of this conveyancing law, to protect people who become creditors before the deed is made. So that you see, under this nineteenth section, you cannot set up the retroacting of this deed, because it allows you to do that only as against the grantor. It does not allow it to be done in favor of the grantor, as is undertaken to be done now. Then we get down to the next section, which is on the subject of possession. It is as follows: ' When the grantee, his heir or executor, in any deed or conveyance, shall take possession of the lands purporting to be conveyed thereby, such deed or conveyance, after being recorded, (though not recorded within six months,) shall have against *all* persons, from the time of taking possession as aforesaid, the same effect and validity to all intents and purposes as if the same had been recorded in proper time.' Well, now, that language sweeps everything. If it is against all persons, of course it is in favor of all persons; if it is against *all* persons it is against the defendant, and it is against the plaintiff; it is against everybody; and what is against one body must necessarily be in favor of some other body. So that here we have the sweeping language that the deed, after being recorded, ' shall have against all persons from the time of taking possession, as aforesaid, the same effect and validity to all intents and purposes as if the same had been recorded in proper time.' That is to say, against *all* persons this deed is going to retroact. Now, the exceptions: 'But as against all creditors who have become so before the recording of such deed or conveyance, and without notice of the existence thereof, such deed or conveyance shall have validity and effect only as a contract for the conveyance or assurance of the estate, interest or use

purported by such deed or conveyance to be conveyed or assured.' When did this landlord become a creditor of this defendant? The rent sued for here was money due before the recording of the deed or conveyance, a year before; money that had been accrued before the suit was brought; money that, on the day suit was brought, was due by this debtor to this creditor, all that was before the recording of this deed or conveyance. Was there notice of the existence thereof? Why, the evidence is, you notified the plaintiff that you had sold the property, and you told him to go to Mr. Turnbull, and he would tell you all about it; he goes down to Mr. Turnbull, the gentleman to whom the reference is made, and he finds out there the deed has never been delivered; that it is a deed that is not to be delivered unless the grantee in it is going to do something, which is, to pay some back taxes, and back ground-rent, and other things, and until she does that she is not to get the deed. It cannot be said that the plaintiff had notice of there being a deed from his going after the purchaser, and trying to get the money, because that was perfectly consistent with the information he got from this referee that the deed was there and was not to be delivered until this purchaser had paid the money. So that, under this section we have that, while this deed, when recorded, is to retroact and be operative against everybody, the exception is that it is not to do so against the creditors who have become so before the recording of such deed or conveyance, and without notice of the existence thereof. 'Such deed or conveyance shall have validity and effect only as a contract for the conveyance or assurance of the estate.' A contract for the conveyance or assurance of an estate is, not what will pass a legal title, and therefore that does not interfere with this fact of indebtedness. Those are the conclusions I am able to come to thus far upon this very difficult question.

Nickel *vs.* Brown.

" Now, the argument of inconvenience is a very strong
argument, and always a very effective argument, when
you have to construe a doubtful written paper, or writ-
ten instrument of any kind, whether of contract or not.
If the defendant is right just see what the position of
every ground landlord is in this State.   The tenant can
very easily get rid of being involved for the payment
of rent, becoming due after he assigns, because he can
insist at the time, and see it carried out, insist at the
time the conveyance takes place; that that conveyance be
put into the Record Office.   How is it with this land-
lord?   On the first of January, 1890, the landlord's
rent becomes due—six months ground-rent.   He wants
to know who is to pay it.   He knows that it was John
Smith who paid him the last ground-rent, and who
owned the property at that time.   How is it now?
Well, John Smith tells him, I don't own the property,
Jones owns the property; I have sold it to him; and he
goes to the Record Office, the only place he can go, and
he finds no deed there at all, but finds the title stands
in the name of John Smith.   He goes to Jones.   Jones
says, well, yes, I bought the property, but I do not intend
to put my deed on record.   The Court of Appeals has
decided he is not bound to put his deed on record.
Well, what is the landlord to do?   Now, his ground-
rent is due on the first of January.   The last owner of
the leasehold says, I won't pay the rent; and the man to
whom the last owner sold it says, I won't pay the rent.
Now what is he to do?   If he brings this suit, and these
people, between them, will get that deed on record the
next day, the next six months, or the day the case comes
up for trial, or the last day of trial, away goes the suit;
the landlord is involved in all that suit, and there is no
way to help himself; but it is even worse than that.   You
say the landlord has the remedy of re-entering upon the
property.   Well, so he has the remedy of re-entering
upon the property, but that is a remedy not favored by

the Court.    Our own Court of Appeals, *Donelson vs.
Polk*, 64 *Md.*, 501, I think, goes over this matter, and
says that a Court of equity ought not to require a land-
lord to re-enter; they ought not to look to the fact that
he could re-enter, because that is expecting him to do
an unfavored thing.    But that is not the hard thing I
want to allude to.    It is this matter of distress.    Sup-
pose the property is full of goods.    Whom is he going
to distrain against?    He gets out his distraint, if that
is his remedy, and the person who owes him that rent
is this last owner of the leasehold, the one who says
he sold it and won't pay it.    He gets out his distraint
against him, because he is the one that owes the money,
the deed not being recorded.    Now, when a man gets
out a distraint he has to make an account out against
his tenant and swear to it.    Well, he gets his account
made out, and swears to it, and names who his ten-
ant is, and all that is true.    He sends his bailiff up to
the house and seizes the furniture.    The next day after
that these parties put this deed on record, and then,
according to this theory, that deed retroacts and becomes
a perfectly effective deed from the day it is dated.    The
consequence is, the landlord is doing a perfectly right
thing, what he had a right to do the day before, makes
himself an absolute trespasser, because the distraint law
makes a distraint proceeding not in conformity with its
provisions an absolute nullity.    So the landlord, doing
a perfectly honest and right thing, under the construc-
tion now sought to be given, makes himself a trespasser.
Now, these are some of the inconveniences resulting
from putting the construction upon this registry law,
that is sought to be put upon it now.    I have, for the
reasons stated, rejected all the defendant's prayers and
granted the plaintiff's prayers."

    The defendant excepted to the rulings of the Court,
and the verdict and the judgment being for the plaintiff
she took this appeal.

Nickel *vs.* Brown.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Oscar Wolff,* and *Alfred S. Niles,* for the appellant.

Reference was made to the following authorities: 2 *Taylor on Landlord and Tenant,* secs. 444, 452, 453, (*8th Ed.*); 1 *Wood's Landlord and Tenant,* sec. 346, (*2d Ed.*); *Lekeux vs. Nash,* 2 *Strange,* 1221; *Taylor vs. Shum,* 1 *B. & P.* 21; *Odell vs. Wake,* 3 *Camp.,* 394; *Johnston vs. Bates,* 48 *N. Y. Sup. Ct.,* 180; *Tate vs. McCormick,* 23 *Hun.,* 218; *Borland's Appeal,* 66 *Pa. St.,* 470· *Childs vs. Clark,* 3 *Barb. Ch.,* 52, 60; *Carter vs. Hammett,* 18 *Barb.,* 608; *Pitcher vs. Tovey,* 4 *Mod.,* 71; *Onslow vs. Corrie,* 2 *Maddock,* 330; *Valliant vs. Dodemede,* 2 `Atkyns,* 546; *Gear, Landlord and Tenant,* sec. 125; *Nelson vs. Hagerstown Bank, et al.,* 27 *Md.,* 73; *Stanhope & Co. vs. Dodge, et al.,* 52 *Md.,* 483; *Bryan's Lessee vs. Harvey,* 18 *Md.,* 113; *Knell vs. Green St. Bld. Association,* 34 *Md.,* 67; *Beehler vs. Ijams,* 72 *Md.,* 193; *Devlin on Deeds,* sec. 624; *Koch and Keller vs. Md. Coal Co.,* 68 *Md.,* 126.

*Stewart Brown,* (on the brief of *Brown & Brune,*) for the appellee.

BRYAN, J., delivered the opinion of the Court.

It appears from the evidence in the cause that Stewart Brown, as trustee, is seized of the reversion in fee in three certain lots of ground lying in the City of Baltimore and that this reversion is expectant on a leasehold estate for ninety-nine years. The lease is not set out in the transcript sent to this Court, nor any extract from it. We, however, gather from statements in the bills of exception that a rent was reserved on each lot of sixty dollars per annum, payable half yearly on the first day of January and on the first day of July in each and every year, and that the lessee covenanted for him-

self, his personal representatives and assigns to pay the rents when they should become due, and all taxes and assessments on the property.    It is also stated that Christian G. Nickel by assignment duly recorded in 1886, became possessed of the leasehold and that he paid the several rents up to January, eighteen hundred and eighty-nine, and that no rent has been paid since that time.    Christian Nickel died before the institution of this suit, and his widow Fredericka C. Nickel was duly qualified as his executrix.    In July, 1889, this leasehold interest was duly sold by the executrix under an order of the Orphans' Court of Baltimore City to Mrs. Scott. Deeds were executed for the leaseholds in the several lots mentioned in September, 1889, and delivered before the first of January, 1890, but they were not recorded until June, 1890.    There was evidence that Mrs. Scott took possession of the property on the day of the sale to her, and circumstances were proved sufficient to leave to the jury the question of whether the trustee had notice of the existence of the deeds before the institution of this suit.    The suit was brought in February 1890, after the delivery of the deeds to Mrs. Scott, but before they were recorded, and the leading question is, whether the executrix is liable for the rents and taxes that were in arrear when the suit was brought.

By the terms of the lease it was required that the rents should be paid semi-annually at stated periods throughout the entire term of the tenancy.    When these periods arrived, the person who occupied the position of tenant was bound by covenant to pay them.    Nothing can be more clear than that there was to be no intermission in the payments; there was always to be a tenant who was bound to pay and this tenant was either to be the original lessee, or an assignee of the term.    The assignee became bound by the covenant to pay the rent as soon as his legal title by assignment was per-

fected; the obligation of this covenant ceased as soon as his title as assignee came to an end, but it continued until that time. In a suit brought against him after his title by assignment had terminated, no recovery could be had at law for rents which had accrued during the assignment; although it was otherwise in equity. *Hintze vs. Thomas,* 7 *Md.,* 346.

But his assignment continued in full force and effect until he put some one in his place possessed of the leasehold by legal title. In *Mayhew vs. Hardesty,* 8 *Md.,* 479, it was decided that an assignee was liable on the covenants of the lease, although he had sold his entire interest to a third person and executed a bond of conveyance for the property and the lessor had repeatedly accepted rent from the purchaser. It was held necessary that the legal title should pass to the purchaser before the assignee's liability ceased and that the legal title could not pass except by deed executed and recorded. In *Lester vs. Hardesty,* 29 *Md.,* 50, it was said that the legal obligations upon the covenants in a lease "run with the land, and bind the party holding the legal estate." And it was held that where the assignee had sold his interest in the leasehold and executed and delivered a deed to the purchaser, that the purchaser was under no legal obligation to record the deed and that until recorded, the vendor continued to hold his position as assignee and was liable on the covenants of the lease. There can be no *hiatus* in the tenancy; there can be no abeyance of the legal title to the leasehold. The requirement of the lease is that throughout the whole period of its existence there shall be some one to fulfil the obligations of the tenancy. The mode by which the legal title must be conveyed is distinctly provided in the twenty-first Article of the Code of Public General Laws. The first section is as follows: No estate of inheritance or freehold, or any declaration or limitation of use, or any estate

above seven years, shall pass or take effect unless the
deed conveying the same shall be executed, acknowl-
edged and recorded as herein provided." It will be seen
that leaseholds for more than seven years are to be con-
veyed in the same manner as inheritances and freeholds.
By the thirteenth section it is enacted that the deed must
be recorded within six months; the fourteenth section
provides that when acknowledged and recorded, as di-
rected, it shall take effect as between the parties thereto
from its date; the fifteenth, as if from abundant caution,
repeats the declaration of the first section that it shall
not pass title unless acknowledged and recorded. The six-
teenth section enacts that where there are two or more
deeds conveying the same property, the one which is first
recorded according to law shall be preferred, if made
*bona fide* and on good and valuable consideration. These
citations from the statute law show the indispensable
necessity of the registration of deeds. The recording is
the final and complete act which passes the title, until
this is accomplished everything else is unavailing. As
the recording is necessary to the passing of the title, it
must follow as a matter of course that until the recording
ing takes place, the title remains in the grantor. The
registered deed shows the title; whatever other rights
may arise from the unregistered deed, it cannot effect a
transmission of the legal title. But after the registra-
tion within six months from date has taken place, the
fourteenth section makes it effective between the parties
from its date; that is to say, the grantor is obliged to
accord to the grantee all rights which belong to owner-
ship and title after that period. But the section was
not intended to be in conflict with other parts of the
law, and to impugn in any way its leading purpose to
make the registry of deeds the official and authoritative
expository of title to real and leasehold property. It
has the effect plainly signified by its language and does

Nickel *vs.* Brown.

not work a retroactive transmutation of title. The faith
and credit which the law intends to give to the registry
would be greatly weakened if at any moment there could
be a legal title by deed, which did not appear upon the
registration records. The nineteenth and twentieth
sections make provision for the recording of all deeds,
except mortgages, after the expiration of six months
from date. They are to have when recorded the same
validity and effect against persons named in these sec-
tions as if recorded within six months. But it is not
said that the title is to pass before they are recorded.
When recorded the title passes. And then by the nine-
teenth section they are to have against the grantors,
their heirs or executors, and against all purchasers with
notice, and against all creditors of the grantors and their
heirs, who have become so after the recording of the
deeds, the same effect which they would have had if re-
corded in time. By the twentieth section if the grantee
shall take possession of the property conveyed, the deed
after being recorded (although the record is made after
the expiration of six months) shall have the same effect
against all persons as if recorded in proper time; but
the priorities are not affected which are given by the six-
teenth section to another grantee who shall have recorded
his deed in the meantime. By the twenty-first section
it is declared that the deed shall have effect only as a
contract for conveyance against all creditors who shall
have become such before it was recorded. These sections
determine the rights which deeds recorded out of time
shall confer on grantees in their dealings with persons of
the descriptions mentioned; but as has been already said
they do not affect the rule established by previous por-
tions of the law, that the title does not pass until the
recording takes place. The deeds to Mrs. Scott were
recorded in June, 1890; at that time she was invested
with the legal title, and then, and not earlier, the liability

of the former assignee, her grantor, ceased to exist. We do not find that this liability depended on any question of notice, or possession, or on any thing else except the possession of the legal title. The suit was brought in February, 1890, for the arrears of rent and taxes due in January immediately previous. The learned Court below held that the defendant was liable for them and we approve of its decision. In the view which we have taken of the law, the other questions in the case are entirely unimportant.

We have read with great pleasure and profit the very able and lucid opinion delivered by Judge DUFFY when he decided this case in the Court of Common Pleas. We desire to acknowledge the aid which we have derived from it in the consideration of this very interesting and important question. We approve of his conclusion and agree, in most respects, with his reasoning. As an important contribution to juridical knowledge, we shall direct it to be published in the Reports.

*Judgment affirmed.*

(Decided 22nd January, 1892.)


ALVEY, C. J., and McSHERRY, J., dissented.