(Decided December 3rd, 1896).

---

# THE CONSUMERS' ICE COMPANY *vs.* WILLIAM H. H. BIXLER & CO.

*Landlord and Tenant—Liability for Rent of Assignee of the Term—Agreement by Assignee to Perform Covenants of Original Lease—Privity of Estate Between Lessor and Lessee—Assent of Lessor to Assignment by Lessee—Implication of Covenant to Pay Rent.*

Land was leased for a term of years with an implied covenant on the part of the lessee to pay the rent during the term.  Subsequently the leasehold interest was assigned to the defendant and an agreement under seal was made by all the parties by which the lessor assented to the assignment and it was stipulated that all the covenants in the original lease should be in full force between the lessor and the assignee.  The defendant entered into possession and afterwards assigned the lease, without the consent of the lessor, to a third party.  In an action to recover an instalment of rent falling due after such assignment, *Held*, that the effect of the agreement was to make the defendant liable for the rent to the same extent that the original lessee was liable, and therefore such assignment of the term by the defendant did not relieve him from liability for rent subsequently accruing.

The liability of an assignee of a term to the lessor for rent rests upon privity of estate and continues only so long as such privity exists.

But when the assignee of a term expressly agrees to perform all the covenants contained in the lease, he is liable thereon in the same manner as the original lessee.

When a lessee covenants to pay the rent during the continuance of the term, his liability is not terminated by an assignment of the lease, although the lessor may accept rent from the assignee or consent to the assignment.

But if there be in the lease no express covenant to pay rent, the lessee's liability therefor will cease if the lessor consents to an assignment of the term, and such assent may be inferred from his acceptance of rent from the assignee, or other recognition of him as tenant.

When a lessee's liability for rent is not created by virtue of an express covenant but arises from privity of estate, such lessee cannot discharge himself from all future liability by an assignment of the lease without the consent of the landlord.

Property was leased for a term of years subject to a certain annual rental, the lessee agreeing to keep the property in good condition and at the expiration of the term to make certain repairs. It was also agreed that in case of certain damage to the property, no abatement of the rent should be allowed. *Held*, that although the words "subject to the annual rental," etc., may not be in themselves sufficient to constitute an express covenant to pay the rent, yet, these words taken in connection with the other provisions of the lease, show that it was the intention of the parties to bind the lessee for the rent during the term, and there was in effect an express covenant to pay the rent.

Appeal from the Superior Court of Baltimore City. An action of covenant was brought by the appellees to recover the sum of $750, being one-quarter's rent of certain wharf property situated in Baltimore City, due January 1, 1896. The Court below (DOBLER, J.) overruled the defendant's demurrer to the declaration, and in default of a plea judgment was entered for the amount claimed.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*Edgar H. Gans* (with whom was *B. H. Haman* on the brief), for the appellant.

1. When a lease is made with an express covenant to pay rent, two relations arise between the landlord and tenant, privity of contract and privity of estate. If the lessee assigns the lease and rent is accepted by the landlord from the assignee, the privity of estate is destroyed as between the lessor and lessee, but the privity of contract remains,

and by virtue of this privity of contract the lessee may still be held liable for the rent.   *Donelson* v. *Polk*, 64 Md. 501.

2. Where there is no express contract to pay rent, the liability of the lessee to pay rent rests upon privity of estate alone.   This privity cannot be determined by an assignment of the lessee without the lessor's consent.   By express contract is here meant not only where there are words such as " I covenant to pay," &c., but where there are any words which by construction mean " I covenant to pay."   Whenever there are words of this kind, by construction there is a contract to pay rent *in the lease*, and privity of contract arises between the lessor and lessee.   These are not properly speaking implied covenants or covenants in law, but covenants expressed in language in the lease.   Precisely as in a promissory note when there must be an express promise on the face of the paper, a paper such as " I. O. U. or bearer $100," is held to be a good note, for by construction of the language there is a promise on the face of the paper.

3. When a lease is assigned the assignee is liable only by virtue of his *privity of estate*.   There is ordinarily no privity of contract between him and the lessor.   For rent which accrues therefore after his privity of estate is gone, he is not liable, and this privity of estate is destroyed by an assignment, whether the lessor consents or not.   *Donelson* v. *Polk*, 64 Md. 501.

4. These principles are elementary and need no discussion. The appellees, however, contend that the appellant is liable by virtue of the agreement of December 30, 1892, which, *inter alia,* provided:   " It is further agreed between the parties to the first part and the party of the third part (the appellant) that all the covenants and agreements *in the original lease* from Wm. H. H. Bixler *et al.*, trading as aforesaid, to Wm. J. Frederick *et al.*, trading as aforesaid, shall be and remain in full force and effect between the parties of the first part and the parties of the third part hereto.

Their argument runs as follows :   The original lease con-

tained a covenant or agreement to pay the rent. By this agreement of Dec. 30, 1892, appellant agrees that all the covenants in the original lease shall remain in force. Therefore the appellant has expressly covenanted to pay the rent and remains liable on his express covenant even though he has assigned the lease. We reply that the original lease contains no covenant to pay rent, either in express terms or by necessary construction or implication from the words used. We say there was no privity of contract between the lessor and lessee as to the rent.

The lease provides: "The parties of the first part have leased to the parties of the second part for the term of ten years, beginning on the first of January, 1890, *subject to the annual rental of three thousand dollars, payable in quarterly installments* on the first of April, July, October, January."

These words are words of qualification of the estate and not words of covenant, either expressly or by implication. The precise question has been determined. In *Walveridge* v. *Stewart*, 3 Tyr. 650; *S. C.*, 1 Cr. & M. 656, when there was an assignment of lease the words were "*subject to the payment of the rent reserved*," it was held that they did not amount to a covenant. See 1 *Taylor, L. & T.*, sec. 371. So again where the words in a lease were: "At a yearly rent of one thousand dollars for the first ten years, and twelve hundred and fifty dollars for the remaining nine years, payable at the expiration of each and every year of the lease. * * The said lessees well and truly keeping and performing their part of these presents to be by them performed as aforesaid," the Court held that there was no privity of contract as to the rent, but that the sole liability would be the privity of estate. In other words, that there was no contract to pay rent *in the lease. Fanning* v. *Stimpson*, 13 Iowa, 47. In *Kempton* v. *Walker*, 9 Vt. 191, the Court went further and held that the words "yielding and paying" did not give rise to a covenant in the lease. On this question there was a conflict of English authority, but the Court decided in allowance with the more modern rule.

5. Why should the language be *strained* so as to hold the appellant under an alleged express covenant. Evidently the intention of the lessors was to look to the land and not the personal security of the lessee. They could easily have inserted an express covenant to pay the rent. Such covenant is usual and the importance of inserting it is enforced by all the authorities. "An express covenant to pay rent should be inserted in all leases ; or if there is only an *implied* covenant it is inoperative if the lessee assign his term, as such covenants rest merely upon a *privity of estate* ; but where there is an express covenant it rests upon privity of contract and the lessee remains liable as well after as before he assigns his estate. 1 *Wood, L. & T.*, 302.

Again, there is no covenant restraining assignment by the lessee, though there is a covenant against subtitling. The covenant not to sublet does not forbid an assignment. *Parker* v. *Copeland*, 4 Mich. 600 ; *Field* v. *Mills*, 33 N. J. L. 254 ; *Collins* v. *Hasbrouck*, 56 N. Y. 157 ; *Lynde* v. *Hough*, 27 Barbour, 415 ; *Van Renselaer* v. *Smith*, 27 Barb. 140. When a lessor does not exact an express covenant from the lessee, and does not restrain the lessee from assigning, it seems reasonable to contend that he is not relying upon the personal liability of the lessee so much as upon his power of distraint and re-entry. Then, as to the appellant, what was its position? It had become assignee of the lease. It had a right to the occupancy, without the assent of the lessor. Nothing that the lessor could do would interfere with this occupancy under the assignment, and this right of the appellant could be enjoyed without any liability for rent after it had assigned the lease away.

A lessor therefore who has not exacted an express covenant for rent, and an assignee who is rightfully in possession, but who could terminate his liability at any time by assignment, come together to make a contract. In that contract they agree that the covenants and agreements in the original lease shall remain in force. Can it be contended that the assignee thought it was binding itself for rent for

the whole remainder of the term by express contract? Why should it enter into such an obligation? It was not so liable before the contract, and so far as the undisturbed possession of the property was concerned, the lessor could add nothing to that by assenting to the assignment, nor disturb it in any way by withholding the assignment. In this connection the language in *Walveridge* v. *Stewart*, 3 Tyr. 650, is most pertinent. " It is the duty of a party who intends to bind another by a covenant in a former formal instrument to insert it in that instrument in distinct and intelligible terms, by which the party to be bound cannot be deceived, and not to call upon the Court to infer such a covenant from words which are at least equivocal, and which one party may never have intended to use in the sense ascribed to them by the other. It lies upon the plaintiff to show affirmatively that the words amount to an agreement with him to pay the rent." Does this Court think that appellant would have signed this contract if it had thought for one moment that it was binding itself to pay rent for all the balance of the term, whether it should assign away the lease or not?

Again, there are express covenants and agreements in the lease to which the contract aptly applies, *e. g.*, 1. Not to obstruct light, view or ventilation of adjoining property of appellees. 2. Granting mutual accommodation in use of wharf. 3. Not to conduct opposition business, &c. *Thurston* v. *Minke*, 32 Md. 494; *Lynn* v. *Mt. Savage Co.*, 34 Md. 636. By every principle of construction where there are agreements and covenants to which this contract can clearly apply, it should not be extended to embrace others, which, even conceding the claim of the appellees, are expressed in most equivocal language.

The conclusions are therefore : *a.* The appellant is not liable as assignee of the lessee, because there was no privity of estate when the rent accrued. *b.* They are not liable by virtue of the contract referred to, because the original lease contained no covenant or agreement to pay the rent.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief ), for the appellees.

The covenant to pay rent in this case is an *express covenant*. The lease is for ten years, subject to a rental of $3,000.per annum, payable in quarterly installments.   It is *understood and agreed that "no abatement of the rent shall be allowed"* in the event of the wharf being damaged by any vessel (other than those employed by the lessees), though the lessors are to make repairs occasionally thereby.   It is also understood and agreed that in case the property is condemned by the Western Maryland Railroad Company *or by any other authority*, in whole or in part, so as to render it unfit for their business, the *lessees may cancel the lease*, paying the proportionate rent up to the time of actual dispossession.   With these *"agreemnts"* running throughout the lease, are we to be seriously told that there is no *express* covenant to pay the rent so long as the lease exists?   The last quotation is as express as words can make it, that the lessee shall pay the rent down to the time such condemnation takes place.   Moreover, the lessee expressly covenants *"to keep the property* in like good condition, at their own expense, *during the term hereby created*, excepting natural wear and tear."

"Where the assignee expressly covenants to perform all the covenants contained in the lease, he assumes the same position to the lessor as the original lessee stood in, whether the covenants run with the land or not."   *Wood's Landlord and Tenant*, section 332 ; *Rawlings* v. *Duvall*, 4 H. & McH. 1 ; *Jackson* v. *Post*, 17 Johns. (N. Y.) 479.

But let us assume that the original lease contains no covenant except that which arises from the words employed in the first clause thereof, to-wit: " The parties of the first part *have leased* to the parties of the second part *for the term of ten years*, beginning on the first day of January, 1890, subject to the annual rental of three thousand dollars, *payable annually in quarterly* instalments."   *   *   *
And let us further assume for the sake of the argument,

that such is an *implied covenant* only ; still the appellee is
liable.   And in discussing this liability we must bear in
mind the fact that the appellant, by virtue of its covenant
contained in the instrument of December 30th, 1892, as-
sumed all the obligations of the lessee, and therefore is
bound by the *implied as well as the express covenants,* con-
tained in the original lease.   "A lessee cannot discharge
himself from the *implied* covenants, by an assignment,
*without the consent of the lessor, since the original* privity of
estate *existing between them, cannot be destroyed without the
landlord's concurrence."   And an assignee who has cove-
nanted to perform all the covenants* and agreements in the
lease, is placed in the same position.   *Adreon* v. *Hawkins,*
4 H. & J., 319 ; *Taylor's Landlord aud Tenant,* (7th ed.),
sec. 438, page 381 ; *Id.,* vol. 2, (8th ed.), sec 438, page 14;
*Comyn on Landlord and Tenant,* 275 ; *Sutliff* v. *Atwood,*
15 Ohio St. 194; *Lodge* v. *White,* 30 Ohio St. 574; 1
*Wash. Real Property,* (4th ed.), 493 ; *Jones* v. *Barnes,* 45
Mo. App. 593 ; *Charles* v. *Froebel,* 47 Mo. App. 49 ; *Hunt*
v. *Gardner,* 39 N. J. L. 534; *Wadham* v. *Marlow,* 8 East,
316, (9 R. R., page 457) ; *Shinn* v. *Dillon,* 1 Ir. C. L. R.
277 ; *Lindsley* v. *Schneider Brewing Co,* 59 Mo. App. 271 ;
*Willi* v. *Dryden,* 52 Mo. 319; *Ghegan* v. *Young,* 23 Pa.
20.   It is to be particularly observed that in all the cases
relied on by the appellant, *the landlord gave his assent to
the assignment,* which assent is entirely lacking in the case
at bar.

In *Shinn* v. *Dillon,* (1 Ir. C. L. R. 277), decided in 1867,
the facts were that A, a tenant from year to year, under a
parol lease, *assigned* all his interest to B, but the lessor did
not accept B as tenant.   Default being made in the pay-
ment of the rent, the lessee was sued for use and occupa-
tion.   PIGOT, C. B., following LORD MANSFIELD in *Wad-
ham* v. *Marlow,* 8 East, 315, held that the lessee was
liable, the Court saying : " In effect, when the tenant hold-
ing land by parol demise puts another person into occupa-
tion of the land by an assignment to that person, *with*

*which assignment, his landlord, the other party to the parol demise has no privity, the tenant so acting ought, so far as his landlord is concerned, to be treated as occupying the land by means of his assignee."*  " That privity of contract (created by the execution of the lease) continues in law, notwithstanding the assignment of the lessee, until his assignee has been accepted as tenant of the lessor."   If the covenant in the case at bar is an *implied covenant*, the appellant is liable to the appellee for the rent in controversy, because of its contract to fulfill all the covenants and agreements in the original lease.   See also *Iggulden* v. *May*, 9 Ves. 330.

The above authorities are conclusive of the proposition that where the covenant to pay rent is *implied*, that obligation cannot be discharged simply by an assignment by the tenant of his interest in the demised premises, *without the consent or concurrence of his landlord*.   Were it otherwise, the landlord would be bound for the whole term whilst the tenant could dissolve the relation at his pleasure.

BOYD, J., delivered the opinion of the Court.

The questions presented by this appeal were raised by a demurrer to the declaration, which was overruled by the Court below, and judgment entered for the appellees, the plaintiffs in the case.   The facts are set forth in full in the declaration and we are called upon to determine the liability of the defendant under the following circumstances. On December 31, 1889, the appellees leased to Jacob Frederick & Sons a lot of ground in the city of Baltimore for the term of ten years beginning on the first day of January, 1890, " subject to the annual rental of three thousand dollars, payable in quarterly instalments on the first day of April, July, October and January."   On December 21, 1892, Frederick & Sons executed an assignment of the lease to Charles W. Morse, who on the next day assigned it to the defendant.   On the 30th day of December, 1892, an agreement was entered into between Bixler & Co. of the

first part, Frederick & Sons of the second part, and the appellant of the third part, wherein after reciting the original lease and the above mentioned assignments the following provisions and agreements were made : " Now, therefore, these presents witness that, for and in consideration of the premises and the mutual covenants and agreements herein contained and the further sum of one dollar to the parties of the first part by the party of the third part in hand paid, the said parties of the first part do hereby assent to the said two assignments of said leasehold interest above referred to, to Charles W. Morse and to the Consumers' Ice Company of Baltimore, respectively.

" And it is further agreed between the parties of the first part and the party of the third part that all the covenants and agreements in the original lease of William H. H. Bixler *et al.*, trading as aforesaid, to William T. Frederick *et al.*, trading as aforesaid, shall be and remain in full force and effect between the parties of the first part and the party of the third part hereto.

"It is however expressly agreed as stipulated, that the parties of the second part, in consideration of one dollar paid them by the parties of the first part, shall also remain bound by all the covenants and agreements contained in said original lease."

Prior to this the lessors had not given their consent to the assignments and they were made without their knowledge. The defendant accepted the assignment, entered into possession of the premises, and on December 13, 1895, assigned the lease to Anthony G. Hamburger, who accepted it without the knowledge or consent of the plaintiffs. This suit was brought to recover the quarter's rent falling due January 1st, 1896—which was after the defendant assigned the premises to Hamburger.

The liability of an assignee of a term to the lessor rests upon the privity of estate, unless he enters into some contract with him, and only continues so long as that exists. As the defendant assigned the premises before the rent sued

for was due, its liability as a mere assignee of the term had ceased, *Hintze* v. *Thomas*, 7 Md. 346; *Donelson* v. *Polk*, 64 Md. 501, and if the agreement of December 30, 1892, had not been executed, the case would be free from doubt. But as we have seen it was agreed that all the covenants and agreements in the original lease should remain in full force and effect between the appellant and appellees. It therefore becomes necessary to ascertain the extent of the liability of the original lessees.

A lessee may be responsible for rent either by virtue of an express covenant to pay it, or by reason of the privity of estate. If there be no such covenant, then the liability of the lessee rests upon privity of estate alone. Where there is such a covenant the lessee cannot terminate his liability by an assignment of the lease, although the lessor may accept rent of the assignee or give his consent to the assignment. If, however, there be no express contract to pay the rent the lessee's liability will cease if the lessor consents to an assignment, and such assent may be inferred by his accepting rent of the assignee or other act recognizing him as his tenant. That is because the privity of estate is destroyed, and as there is no privity of contract between them there is no longer any obligation, express or implied, on the lessee. But in order to destroy this privity of estate between lessor and lessee there must be the concurrence of the landlord. It is not correct to state, as a rule of law, that a lessee, who has not made an express covenant to pay rent, may discharge himself of all future responsibility by assigning the lease. Take the lease before us, for example, and let us assume that there is no express contract in it to pay rent. The lessors have undoubtedly bound themselves for ten years, if there be no default on the part of the lessees. They could not rent the property to any other tenant during that term and could not interfere with the possession of the lessees so long as they do what the agreement or the law demands of them. When they executed and delivered the lease the law held them liable on certain implied covenants,

that the lessees should have the quiet enjoyment of the premises during the term, &c. *Baugher* v. *Wilkins*, 16 Md. 25. And there was also an implied covenant on the part of the lessees that they would pay the rent at the times named in the lease. That implied covenant only continues so long as they hold the estate, and depends upon the privity of estate, but they cannot destroy that privity of estate without the consent of the lessors, because by the lease the lessors were entitled to have it continue for ten years.

Although it is said in *Taylor's Landlord and Tenant*, section 371, that a lessee or an assignee may discharge himself of all future responsibility by assigning over, an examination of the authorities cited to sustain that position will show that they were applicable to cases of assignees and not to those of lessees. The same author in section 438 says, "nor can a lessee discharge himself from the *implied* covenants by an assignment without the consent of the lessor, since the original privity of estate existing between them cannot be destroyed without the landlord's concurrence, but a consent may be inferred from the lessor's receiving rent from the assignee, or recognizing him in some other way as his tenant." To the same effect are 1 *Wash. on Real Prop.* 493; *Sutliff* v. *Atwood*, 15 Ohio St. 194; *Lodge* v. *White*, 30 Ohio St. 569; *Shine* v. *Dillon*, 1 Ir. C. L. Rep. 277 ; *Smith Landlord and Tenant*, (292)–(293).

If then it be true that Frederick & Sons were liable for rent for the whole term, does it not follow that the appellant became so by the execution of the agreement of December 30, 1892? After reciting the lease and the assignments previously made, the lessors, in consideration of the mutual covenants and agreements therein contained and of the sum of one dollar paid to him, gave their consent to the two assignments. The appellees and the appellant then agreed that all the covenants and agreements in the original lease should be and remain in full force and effect between them. Remembering then that the most valuable part of the lease to the lessors was the payment of the rent,

and that the original lessees were bound for it, we are forced to the conclusion that it was the intention of the parties to place the appellant under the same obligation that the lessees were under, which among other things was the payment of the rent during the term. The appellant and the lessors then stood in the same relation to each other as they would have done had the appellant been the original lessee, and hence by assigning to Hamburger without the consent or ratification of the appellees, it did not relieve itself from liability for rent. The cases of *Adreon* v. *Hawkins*, 4 H. & J. 319; *Rawlings* v. *Duvall*, 4 H. & McH. 1; *Iggulden* v. *May*, 9 Ves. 330 are somewhat in point, but without reference to them the meaning of the parties to the agreement seems to us clear and conclusive of the question.

But although we assumed above, *ex gratia argumenti*, that there was no express covenant to pay the rent during the term, we are of opinion that by a proper construction of the whole lease there is what amounts to an express covenant. By that we do not mean to say that the lessees in so many words entered into a formal covenant to pay the rent in terms usual in leases, but that from the language of the whole instrument a covenant or agreement to pay the rent is fairly inferrible. The property was leased " for the term of ten years  *  * subject to the annual rental of three thousand dollars, payable in quarterly instalments, " etc. The Fredericks were to have uninterrupted use of the wharf front for the purposes of their business with the privilege of extending a vessel through the pier. *At the expiration of the lease* they are to have the privilege of removing all their machinery, ice-houses and fixtures, but are to replace the pier as it existed when they cut through it. Bixler & Co. agreed to repair the wharf front thoroughly, " after which the said Fredericks are to keep the property in like good condition at their own expense *during the term hereby created*, excepting natural wear and tear ". In the event of the wharf being damaged by any vessel other than those employed by the Fredericks, Bixler & Co. agreed to repair

it with as little delay as possible, "*during which time, how-ever; no abatement of the rent shall be allowed.*"  It was agreed that in the event of a condemnation of the property, as was contemplated, to such an extent as to render it un-fit for their business, the Fredericks "may cancel the lease, *paying the proportionate rent up to the time of actual dis-possession.*"  When we read these provisions together the conclusion seems irresistible that it was contemplated, under-stood and intended to be agreed between the parties that the Fredericks should hold the property during the whole term.  They agreed to keep it in repair, not while they occupied it, but "*during the term hereby created.*"  At the expiration of the lease they are required to replace the pier which they are authorized to cut through.  In the event of the condemnation of the property to an extent that will render it unfit for their business, they are authorized to can-cel the lease, but are required to pay the rent to the time of actual dispossession.  Now without meaning to say that the use of the words "subject to the annual rental of three thousand dollars, payable in quarterly instalments," was of itself sufficient to make an express covenant to pay, yet when they are taken in connection with the other provisions we think it was evidently the meaning and intention of the parties to bind the lessees for the rent during the term, and as the lease was signed and sealed by the lessees an action of covenant will lie.  That being our opinion as to the lia-bility of the lessees, what we have said above will suffic-iently indicate our views as to the liability of the appel-lant—not as assignee, but by reason of the agreement under seal entered into by it with the original lessors and lessees.  It follows that the judgment must be affirmed.

> *Judgment affirmed with costs to the appellee.*

(Decided December 3rd, 1896.)