ELIZABETH RUBIN *v.* JOHN LEOSATIS ET AL.

MORRIS H. WOLF ET AL. *v.* JOHN LEOSATIS ET AL.
[Nos. 2, 3, April Term, 1933.]

Decided May 26th, 1933.

The causes were argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Clarence A. Tucker* and *Frederick H. Hennighausen,* with whom were *Hennighausen & Stein, Rome & Rome,* and *Knapp, Tucker & Thomas* on the brief, for the appellants.

*George Arnold Frick* and *Marcus A. Tregor,* with whom was *George B. Petite* on the brief, for the appellees.

Sloan, J., delivered the opinion of the Court.

The plaintiffs (appellees) are the tenants of the defendants Morris H. Wolf and Lena G. Wolf, his wife, and Benjamin Beck and Cecelia J. Beck, his wife (appellants), of the store room, now known as Nos. 5124 and 5126 Park Heights Avenue, in Baltimore, under a lease to the plaintiffs made April 8th, 1929, for ten years beginning December 1st, 1929, at the rental of $200 per month for the first five years, $225 per month for the next three years, and $250 per month the two last years. It was covenanted in the lease that the lessees would not use nor permit the use of the premises "for the purposes other than those of a lunch room and restaurant," and would "not handle on said premises canned goods for sale in original packages." The lessors on their part covenanted that they would not "at any time during the existence of this lease, rent any other property belonging to them in what is now known as the 5100 block of Park Heights Avenue (west side) for a lunch room and restaurant and * * * that the said lessors will not permit any tenant conducting a delicatessen store in the property belonging to them in said block to convert the same into a restaurant and/or lunch room as such." On June 6th, 1930, the defendants Morris H. Wolf and Benjamin Beck leased the store now known as 5112 Park Heights Avenue to Samuel Mazer and Annie Mazer, his wife, for the term of six years and two months beginning August 1st, 1930, at $100 per month, and it was stipulated in that lease that the lessees would not use nor permit the use of the premises "for the purpose other than those of a store

for the sale of delicatessen, including tobacco, soft drinks and confectionery," and it was therein further covenanted that they "may transfer this lease only for the same business as herein permitted," with the consent in writing of the lessors, and, on the 2nd day of September, 1930, with such consent, the lessees assigned the lease "without recourse * * * as to the terms and covenants" of the lease to Hyman Rubin and Elizabeth Rubin, his wife. Hyman Rubin died June 16th, 1931, and his wife has since conducted the business at 5112 Park Heights Avenue.

The plaintiffs, ever since they improved the premises leased by them, at a cost of $12,000, and installed fixtures and equipment at a cost of $18,000, in all, according to their testimony, $30,000, have been conducting a restaurant, as commonly understood, and there is no suggestion in the record to the contrary, but the complaint is that Mrs. Rubin has, in addition to the delicatessen business, embarked in the restaurant business, and that the lessors have permitted her to do it in violation of the covenant of the lessors with the plaintiffs, and of her covenant with the same lessors.

One of the landlords' contentions is that they should not have been included in the decree granting the plaintiffs injunctive relief, because the other tenant, Mrs. Rubin, is before the court and an effective remedy can be had against her. In the case of *Schmidt v. Hershey & Dean,* 154 Md. 302, 307, 140 A. 363, this court held the lessor to be a proper codefendant with the lessee charged by the plaintiff with encroaching on the use permitted by the latter's lease, and it was said in the opinion that *Snavely v. Berman,* 143 Md. 75, 77, 121 A. 842, was sufficient authority without reference to other cases. See *Belvedere Hotel Company v. Williams & Zeutgraf,* 137 Md. 665, 113 A. 335. Recently, in *North Avenue Market, Inc., v. Keys,* 164 Md. 185, 164 A. 152, this court held that a lessor may, by injunction, compel a tenant to observe the covenants of a lease which restricts the sale to certain classes of goods and merchandise, and another tenant (*Snavely v. Berman, supra*) may require the landlord to protect his covenants against other lessees.

Although there was no reference to it in the bill or answers, one of the plaintiffs, Andrews, testified that in February, 1932, he and his partner, John Leosatis, and his (Andrews') brother-in-law, formed a corporation under the name of "Pimlico Restaurant, Inc.," which was the sign on the window, the name under which the business theretofore conducted by them having been "Pimlico Restaurant," and that "around February" they assigned the lease to the corporation, and that after that time they paid the rent by the corporation's checks, which were accepted by Beck, who acted for the landlords and who "didn't say a word." The lessors' contention is that the bill should be dismissed because the evidence shows that the plaintiffs have parted with their interest in the lease to them from Wolf and Beck, and that, having no interest in the suit, they are not entitled to relief, and cite *Bannon v. Comegys,* 69 Md. 411, 418, 16 A. 129, as authority for this view. They also cite on this point 35 C. J. 982, sec. 67, and cases therein cited—that the assignment of a lease to a corporation organized by partnership lessees is a breach of the covenant of the lease, but we are not confronted with that objection here, as the undisputed testimony is that the lessors have, by their conduct, waived a forfeiture (if any) of the breach. 35 C. J. 1077, sec. 252; *Consumers' Ice Co. v. Bixler,* 84 Md. 437, 447, 35 A. 1086. The lessors, apparently, were content with eliciting from the Greek, who had some difficulty in understanding the questions put to him, the statement of fact that he, his wife, and Leosatis had obtained from them a lease which they had assigned to the corporation. The words "assign," "assignee," and "assignment" were used only in the questions asked the witness on cross-examination, to which his answers were "Yes, sir." There is no doubt that the corporation was formed and that it was conducting the business in the premises leased, and that the brother-in-law thus came into it. The record, however, shows that the record evidence of the lease is still in the names of the original lessees, Andrews, his wife, and Leosatis, and that they hold the legal title to the leasehold estate.

In the absence of any legally sufficient proof of an assignment in compliance with the requirements of the rules of evidence and the recording statutes, or other clear proof that the plaintiffs had no right to enforce or protect, the court must take the record as it is presented and decree accordingly. So, while the plaintiffs may not have a substantial interest in the lease, or may not be necessary or indispensable parties, which we do not here decide, are they proper parties and is the effect of the contention, if sound, to leave the suit without a plaintiff? The rule, in cases of assignment, as stated by *Story's Equity Pleading* (10th Ed.), sec. 153, is: "In general, the person having the legal title to the subject-matter of the bill must be a party (either as plaintiff or defendant), although he has no beneficial interest therein; so that the legal right may be bound by the decree of the court. In cases, therefore, where an assignment does not pass the legal title, but only the equitable title to the property (as, for example, an assignment of a chose in action), it is usual, if it be not always indispensable, to make the assignor, holding the legal title, a party to the suit. 'The true principle would seem to be' * * * 'that, in all cases where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignor, and the extent and validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the latter a party. At most, he is merely a nominal or formal party in such a case.' " See *Grand United Order of Odd Fellows v. Merklin,* 65 Md. 579, 5 A. 544, 546. If the corporation had been the plaintiff, it might, as the recognized and accepted assignee of the lessees, have maintained the suit as against the lessors, but the record evidence then would have been a decree on the covenants of the lease in favor of a stranger to the instrument. As between the landlords and the corporate assignee, the rights of the parties under the lease might have been determined without the plaintiffs as parties, but there could be no objection to their being made parties plaintiff, even though they were not necessary or indispensable. The cor-

poration, in which they were substantialy interested, could not complain, if it stood by and allowed a decree to go against it, merely because it had not been joined in the suit, as the only inference is that it not only knew of the pendency of the suit, but actively participated in its prosecution (*Snavely v. Berman,* 143 Md. 75, 77, 121 A. 842), and is as fully benefited, as the defendants are bound, by the decree. If the positions had been reversed and the lessors had filed a bill to enforce the covenants of the lease to clear the record it would be necessary to make the present plaintiffs defendants in such a proceeding. If they would be proper parties under such circumstances, then logically they are proper, even if unnecessary or not indispensable, in the instant case. The effect of the decree in this case is to bind all the parties, including the corporation, "Pimlico Restaurant, Incorporated."

Under the recording acts of the state, Code, art. 21, sec. 1, no estate above seven years "shall pass or take effect unless the deed conveying the same shall be executed, acknowledge and recorded," and this provision has been held to apply with equal force to assignments of leases of more than seven years. *Peter v. Schley's Lessee,* 3 H. & J. 211; *Mayhew v. Hardesty,* 8 Md. 479; *Lester v. Hardesty,* 29 Md. 50; *Nickel v. Brown,* 75 Md. 172, 23 A. 736. In all of these cases it was decided that the assignor was liable at law to the landlord, where, after assignment and before recording, the lessee was responsible to the lessor under the covenant for the payment of rent, and that the legal title did not pass to the assignee until the assignment was recorded. "Under our registry laws" (Code, art. 21, sec. 1 *et seq.*) the entire interest in a lease for more than seven years cannot "be transferred or assigned in any other way than that prescribed by those laws and that no acts *in pais,* short of a deed duly executed and recorded, are competent for that purpose." Until the assignment is so executed and recorded, the assignee is "a mere sublessee." *Mayhew v. Hardesty,* 8 Md. 479, 495; *Peter v. Schley's Lessee,* 3 H. & J. 211. The lessor's remedy against an assignee whose assignment is not executed and recorded according to law is in equity. *Hintze v. Thomas,* 7 Md. 346; *Nickel v. Brown,* 75 Md. 172, 185, 23 A. 736.

Assuming that the assignment in this case was not executed and recorded as required by law, and we assume this, in the absence of proof, to be the fact, the plaintiffs, as lessees, can be sued at law by the lessors on the covenant to pay the rent (*Consumers' Ice Co. v. Bixler,* 84 Md. 437, 447, 35 A. 1086; *Nickel v. Brown,* 75 Md. 172, 23 A. 736); then it can hardly be contended that they have no interest in the outcome of this case.

The equitable assignee, the Pimlico Restaurant, Inc., was a proper, perhaps necessary, party plaintiff. Two of the three persons interested in the corporation are the record holders of the lease and testified in the case. If the suit had been against the record lessees as defendants, the decree would have bound the corporation to the same extent as though it had appeared and answered. This was expressly decided in *Snavely v. Berman,* 143 Md. 75, 77, 121 A. 842, where it was held that the knowledge of and participation in the case of the party, another tenant of the defendant, whose conduct was alleged to be the violation of the lease there under consideration, bound him.

The object of the bill in this case is to restrain Mrs. Rubin from engaging in the same line of business as that of the Pimlico Restaurant, Inc., a corporation, which is not a party to the suit, and which, as such, cannot be given injunctive relief. Yet as it is represented in this case, and has actively participated in it, we see no reason why the questions at issue cannot be determined, the rights of the parties ascertained, and the controversy ended [notes to *Story's Eq. Jur.* (10th Ed.), sec. 154; *Shartzer v. Mt. Lake Park Assn.,* 86 Md. 335, 338, 37 A. 786], as the contention of the defendants that the plaintiffs have no interest in the subject-matter of the suit is an objection to form and not to substance. The allegation of the bill is that Mrs. Rubin is exceeding the bounds of the lease to Samuel and Annie Mazer, entered into June 6th, 1930, fourteen months after the lease to the plaintiffs, and so framed as to avoid conflict with the use permitted by the same lessors to the plaintiffs. In addition to being allowed to sell delicatessen, "including tobacco, soft drinks

and confectionery," the plaintiffs' right under their lease was to conduct a lunchroom and restaurant, and their lease forbids them from handling "on said premises canned goods for sale in original packages," and thus protects the other lessees in their delicatessen business, and the lessors on their part agreed that, during the existence of the plaintiffs' lease, they would "not permit any tenant conducting a delicatessen store in the property belonging to them in said block (west side of 1500) to convert the same into a restaurant and/or lunch room as such." The chancellor found as a fact that Mrs. Rubin was not only running a delicatessen business in the premises, but was running a restaurant as well, where there was as much publicity given to the business of serving meals and lunches as to the sale of delicatessen, or perhaps more, and the testimony fully justifies such a finding. It will serve no useful purpose to define "delicatessen" and "restaurant"; they are well-known businesses, with differences so distinguishable that no one can be mistaken as to their identity.

It was provided by the decree in this case that the defendants be enjoined, during the term of the lease to the plaintiffs, "from selling upon the premises, 5112 Park Heights Avenue, and from offering by signs or other advertising methods, to furnish or sell meals on said premises, or the conducting of or knowingly permitting the conduct or operation of a restaurant or lunch room for the preparation or service of meals upon said premises, by whatever name such restaurant or lunch room may be called. (It being understood that this decree is not to be interpreted as preventing the defendants to sell and dispense at said premises hot coffee and cold sandwiches and beverages and articles of delicatessen variety (in which tobacco and confectionery are included)," which we agree conforms to the evidence given as to the character of business conducted by Mrs. Rubin before she added the lunchroom or restaurant business of which complaint has been made. The decree, therefore, will be affirmed.

*Decree affirmed, with costs.*