## MARY ANN KELLEY'S CASE.

### Kennebec.    Opinion November 26, 1923.

*Under the Workmen's Compensation Act, when there is no direct or primary evidence of an industrial accident and the conclusion that such an accident occurred is reached by inference, such inference must be reasonable and natural. If so it matters not that some other tribunal might with equal logic and reason draw a different conclusion.*

The petitioner's deceased husband was a blacksmith axe maker. He died from gangrene superinduced by diabetes. The defendants deny that his death was caused or accelerated by an industrial accident. The only evidence of such an accident, worthy of consideration, is that of a witness who saw the deceased while working at a forge step back rather suddenly and utter an oath. The witness at the same time saw a ten-pound metal die lying on the floor near the deceased. He did not see it fall. The deceased made at the time no complaint of pain or injury to the man working with him, or to any other person. His work was not interrupted. He worked all that day and the next. He died some months later. The Chairman based his finding upon the inference that the metal die fell on the foot of the deceased producing an injury that caused, or hastened his death. In the opinion of the court the inference was neither reasonable nor natural.

On appeal. A petition under the Workmen's Compensation Act of Mary Ann Kelley as dependent widow of Justin Kelley, who, it is alleged, while in the employ of Emerson & Stevens Manufacturing Company, at Oakland, Maine, was injured by a metal die falling and striking on the top of his right foot and later gangrene developed in the foot and on July 5, 1921, about four months after the alleged accident, he died. Upon a hearing the Chairman of the Industrial Accident Commission awarded compensation, and respondents entered an appeal, contending that the case showed no evidence upon which the finding of the Chairman could be based. Appeal sustained.

The case sufficiently appears in the opinion.

*Andrews, Nelson & Gardiner,* for claimant.

*Hinckley & Hinckley,* for respondents.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, DEASY, JJ.

MORRILL, J., concurring in result.

DEASY, J. Petition for compensation under R. S., Chap. 50, as amended.

The petitioner alleges that her late husband Justin Kelley, a blacksmith axe maker, died as the result of an industrial accident. Quoting the petition: "While working at the anvil a die came out and fell on his foot."

Mr. Kelley's death occurred about three months after the alleged accidental injury. The cause as stated in the death certificate was "gangrene of toe," the contributing cause "diabetes."

The defendants deny that the deceased suffered any accidental injury and say that the gangrene was a not unusual manifestation of his diabetic condition.

At the hearing before the Chairman of the Commission the burden was upon the petitioner to prove her case. *Westman's Case,* 118 Maine, 133.

She had the burden of proving that the metal die fell on her husband's foot, and that the injury thus occasioned caused or hastened his death. The Chairman found the burden sustained.

If supported by any legal evidence the finding must stand. If not it must be reversed inasmuch as a finding of a material fact without evidence is an error of law.

The evidence is of three classes.

(1) Hearsay—Hearsay is entitled to no weight. Its admission however, is harmless unless the decree is based upon it.

(2) Upon the question as to whether the condition of the man's foot was caused or aggravated by trauma, the medical testimony is neutral. One doctor indeed gives as his opinion, "I think it was from trauma" but he admits that there was no possible way that he could tell and frankly bases his opinion upon what the patient told him.

(3) Casings' testimony—Warren Casings testified that a day or two before Kelley stopped work "As I was going by him (Kelly) I saw him step back and I saw this die on the ground." He says that as Kelley stepped back he uttered an oath. Other testimony

showed the weight of the die to be about ten pounds. From this testimony the Chairman draws the conclusion that the die fell a distance of about three feet and struck on Kelley's foot, producing an injury which caused or hastened his death.

Casings' testimony is not disputed. Indeed there is no conflict of primary testimony in the case. The question that the court has to consider is whether the Chairman's inference is a rational and natural inference from the proved facts. If so the decree must stand even though a different inference might with equal logic and reason be drawn by some other tribunal. *Mailman's Case*, 118 Maine, 179.

If a ten-pound die had fallen a distance of three feet and struck on Kelley's foot producing an injury so severe as to cause or accelerate his death, the probability is so strong as to be almost a certainty that his work would have been for a brief period at least, interrupted and that he would have, at the time made some complaint of injury to the foot, or at all events have mentioned the matter to his fellow workmen.

But there was no interruption. He worked all that day and the next. He did not at the time complain of injury to the foot, nor mention it to the man working with him at the same forge.

No issue is raised of the credibility of testimony. The question is whether under these circumstances it may reasonably be inferred that the die which the witness Casings saw lying on the floor had fallen upon Kelley's foot producing an injury of such severity as to cause death. We think that the inference is strained and not reasonable.

In many cases accidental injury has been held inferrable from slight circumstances without direct testimony, but never we believe where as in this case all the facts and circumstances taken together are inconsistent with such inference.

*Appeal sustained.*
*Decree reversed.*