STANDARD OIL COMPANY *vs.* EDITH S. MEALEY, WIDOW OF ARTHUR B. MEALEY, CLAIMANT.

*Workmen's Compensation Act—Review of Commission's Award—Hearsay Evidence.*

On review by the courts of decisions by the Industrial Accident Commission, they are required to adapt themselves somewhat to the increased latitude allowed to the commission as regards methods of procedure, but this adaptation must at the same time, and so far as it can consistently be done, avoid

abandonment of cautions and safeguards which seem necessary, not only for constitutional due process of law, but also for the assurance of reliability in the basis of adjudication.

p. 254

That, on a review by a court of a decision of the Industrial Accident Commission, statements of deceased, made to his wife and his physicians, as to his having fallen and struck his side at a spot where the malignant growth from which he died later developed, were admitted, and that the question whether death resulted from an accidental injury was referred for determination to the jury, although such hearsay statements were the only evidence of such an occurrence, did not involve reversible error.

p. 255

*Decided January 23rd, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Claim under the Workmen's Compensation Act by Edith S. Mealey, widow of Arthur B. Mealey, against the Standard Oil Company of New Jersey, employer and insurer. From a judgment affirming an award of the Industrial Accident Commission in favor of the claimant, the employer and insurer appeals. Affirmed.

The cause was argued before PATTISON, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Edward F. Johnson,* with whom were *Johnson & Adamson* on the brief, for the appellant.

*J. Paul Schmidt,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

This is a case under the provisions of the Maryland Workmen's Compensation Act. The deceased husband of the claimant was employed for six weeks or more by the appellant employer, driving a wagon and delivering cans of oil on small sales about Baltimore. He died March 3rd, 1923; of

lympho-sarcoma or leukemia, that is, of a malignant growth in the glands, and the widow, his only dependent, has made claim on the ground that this was superinduced by injury sustained from a fall against part of the wagon. Compensation was allowed by the State Industrial Accident Commission, and on appeal to the Baltimore City Court was affirmed. The question of fact was referred to a jury, under section 56 of the act.

All the physicians who attended the man during the last month of his life and at the time of his death at Johns Hopkins Hospital agree in their testimony that the cause of death was lympho-sarcoma or leukemia, with certain attendant conditions; and all agree that death invariably results from such an affection. The cause of it is unknown, and it is usually insidious at first, and may run for some time before the patient is aware of its presence. Sometimes it developes and progresses rapidly, but it is unusual for it to do so. There is some difference in the testimony as to possibility of acceleration or aggravation by an injury. Dr. John S. Bishop, who first attended the man, said it was thought a blow or injury would have no effect on lympho-sarcoma, but that in all probability this man had some trouble with his spleen (where the growth was located) before he had the fall alleged, and that as the thing was in a bad shape a little injury might have hastened it a great deal, and he felt, taking the report of injury as true, that it did have something to do with increasing the rapidity of the thing. Dr. Bishop added that this lympho-sarcoma could have developed if the man had not had any injury, however. Dr. Lewellys F. Barker, on the other hand, testified that he had never known of lympo-sarcoma affected by injury in the region of the growth, and he had no idea that such an injury could have hurried that disease, and he thought it very improbable.

There was no visible injury; no bruising or external mark. Evidence of injury consists entirely of reported statements of the man himself prior to his death, which, of course, is hearsay testimony in these proceedings; and all the excep-

tions arise from the acceptance of such testimony as a basis
of compensation under the Workmen's Compensation Act.
The man was first absent from his employment on January
20th, 1923. He made no report of injury then, but his wife
testifies that she telephoned his superintendent that he was
ill and had slipped and hurt his side on January 16th, and
that her husband repeated this to the superintendent when
the latter called a few days later. The superintendent says
the case was reported to him as grippe or cold, and when he
called at the house the man himself said he had a cold and
would be out in a few days, that in February he told the
superintendent he had been injured. And similar testimony
of grippe or cold is given by other employees. The wife
testifies that, when her husband came home on January 16th,
he reported to her that he had slipped and struck his left side
on his wagon that day, and had a feeling as if something
had torn and she felt a lump or "bubble" at the place indi-
cated. The superintendent says the man later described to
him such a fall against the wagon; and three physicians, who
attended the man within a few weeks after the beginning of
disability, say that when examined he gave each of them a
history of such an occurrence. To Dr. Bishop he said it had
occurred to him not once, but several times, and he paid no
attention to it. Additional testimony of some of the work-
man's associates is to the effect that he had been complaining
of cold or grippe before his employment with the Standard
Oil Company, and had secured this latter employment in
hope of improving his condition by work in the open air.

Divergent views have been entertained in other jurisdic-
tions on the relaxation by a court of its ordinary rule for
excluding hearsay evidence on review of compensation cases.
The commissions which administer the laws in the first in-
stance cannot be expected to adhere closely to the rather com-
plex rules developed for jury trials in judicial proceedings,
and they are in many compensation laws expressly relieved
from doing so. Section 10 of the Maryland act provides
that "The Commission shall not be bound by the usual com-

mon law or statutory rules of evidence and technical or formal rules of procedure, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act." It is the view of some courts that, in the absence of a statutory provision relaxing the ordinary court rules (and there is none in Maryland), a court, on review, is expected to give the case its usual scrutiny, discriminating as to the evidence received according to its ordinary rules. An instance of this is in Illinois. *Peoria Cordage Co. v. Industrial Board,* 284 Ill. 90. *Inland Rubber Co. v. Industrial Commission,* 309 Ill. 43. Wigmore, in a comment on the latter case, in 18 Ill. Law Rev. 248, questions the propriety of "the insistence that every part of the evidence shall be tested by the jury trial rules of admissibility," although he agrees in the subsequent "general exercise of the power to review the sufficiency of the evidence" admitted. And see *Spiegel's House Furnishing Co. v. Industrial Commission,* 288 Ill. 422. In England, where these statutory proceedings originated, hearsay is admitted only according to the established rule, as to bodily or mental feelings, but not as to their causes. *Amys. v. Barton,* 5 B. W. C. C. 117 (C. A.); *Gilbey v. Gt. Western Ry. Co.,* 3 B. W. C. C. 135 (C. A.); *Wolsey v. Pethick,* 1 B. W. C. C. 411 (C. A.); *Langley v. Reeve,* 3 B. W. C. C. 175. Other courts admit evidence, such as hearsay, which would be excluded in ordinary judicial proceedings, but only within limitations. In New York, where the statutory provision for the relaxation of rules of evidence before the commission is the same as that in the Maryland act, hearsay testimony is received in court reviews, but an award is not permitted to be based on such testimony alone. *Carroll v. Knickerbocker Ice Co.,* 218 N. Y. 435; *Belcher v. Carthage Machine Co.,* 224 N. Y. 326; *State Treasurer v. West Side Trucking Co.,* 233 N. Y. 203; *Hansen v. Construction Co.,* 224 N. Y. 331. And to the same effect are *Kelley's case,* 123 Me. 261; *Royal v. Hawkeye Portland Cement Co.,* 195 Iowa 534; *Reck v.*

*Whittlesberger,* 181 Mich. 463; *Garfield Co. v. Accident Commission,* 53 Utah 133; *Rockefeller v. Same,* 58 Utah, 124; *Valentine v. Weaver,* 191 Ky. 37; *Riley v. Carnegie Steel Co.,* 276 Pa. 82.

Under section 56 of the Maryland Statute, in the "informal and summary" proceedings "in the nature of an appeal" the court is required to determine whether the commission has justly considered all the facts concerning injury. It has not been directed to relax its established rules of evidence in any degree, or under any conditions. And it seems unquestionably true that the mere allowance of an appeal must intend a review of the decision of the commission with some advantages from the special training and methods of the judicial tribunal. Yet to test the award or decision of the commission strictly by the rules of judicial proceedings must often subject it to requirements which a commission would be unable to meet, and might in effect make it to some degree impracticable for the commission to work effectively without surrendering the freedom given it in section 10. We conclude, therefore, that the courts are required to adapt themselves somewhat to the increased latitude allowed to the commission, and that this adaptation must at the same time, and as far as it can consistently be done, avoid abandonment of cautions and safeguards which seem necessary, not only for constitutional due process of law, but also for the assurance of reliability in the basis of adjudication. We conclude that the courts are not intended to withdraw from litigants under the act all the precautions which in the course of time have been worked out as essentials of orderly, certain justice. And whatever foundation there may be for objections to the rule excluding hearsay in its full extent, it must be admitted that there is still a large residuum of necessary precaution embodied in it. It is to be remembered that, so far as the courts might adjudicate upon second-hand reports of a witness' direct observation, they must usually act upon statements reproduced in part only, not tested by questioning, or by an oath, and reproduced through a very fallible medium.

It is by this same rule that statements reproduced at third or fourth hand are barred out. And, too, while this is one effect of relaxation of the rules to accommodate court reviews to the nature and working of the commission, it must be borne in mind that there are other effects. The rule requiring the production of a writing itself rather than a verbal statement of its contents, for instance, is affected just as much as is the rule excluding hearsay.

With these considerations in mind, then, we have to decide whether it was proper for the court below to admit statements of a deceased workman said to have been made to his wife, and to his physicians, that he had fallen and struck his side at a spot where the malignant growth later developed, and to refer to the jury the determination of the question of fact whether death resulted from an accidental injury, when this is all the evidence there is of such an occurrence. Without extending the discussion at this time in an attempt to work out final general principles, we have concluded that in this particular case the action of the court in each respect was proper. The statements are reproduced by three or four witnesses who heard them at first hand from the workman. They refer to a simple fact, and were such as to leave no room for substantial misunderstanding, and it seems to us basing a finding of fact on them is, after all, hardly any greater relaxation of wise caution than has long been made in the admission of secondary evidence to establish the contents of a writing which cannot be produced. We hold, therefore, that there was no reversible error either in the admission of the evidence or in the refusal of the prayer directing a verdict for the defendant because of insufficient evidence to support the finding of fact; and the judgment is therefore affirmed.

*Judgment affirmed, with costs.*

Parke, J., dissents.