FEDERAL TIN COMPANY, INCORPORATED, v. JOSEPH LEO HOFFMAN.

[No. 30, January Term, 1933.]

432

*Decided March 21st, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Roszel C. Thomsen,* with whom was *Walter L. Clark* on the brief, for the appellant.

*Lester L. Barrett,* with whom was *G. Tyler Smith* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Joseph Leo Hoffman, the claimant and appellee, on May 16th, 1931, was working for the Federal Tin Company, Incorporated, self-insurer, the appellant. At the hearing before the Industrial Accident Commission, the claimant was represented by counsel and the employer by Mr. Hughes, an insurance adjuster. In the claim filed on July 15th, 1931, the claimant stated that he was injured in knees and arm by stumbling over scrap tin that was on the floor. Dr. O'Conner, the company's physician, in his report, stated that the injury consisted of contusion of both knees and sprain of right shoulder; that the treatment was "hot boric acid compresses, massage"; that claimant was not then, June 5th, 1931, able

to attend to any part of present or any other occupation; that injury had not resulted in any permanent disability; that disability was likely to last about three weeks from date of accident; that patient stated he tripped over some tin and injured both knees and right shoulder. The case was heard by the commission on November 4th, 1931, on the following issues: (1) Whether the claimant received an accidental injury arising out of and in the course of his employment; (2) whether the disability of the claimant is the result of an accidental injury arising out of and in the course of his employment; (3) whether the disability of the claimant as the result of an accidental injury arising out of and in the course of his employment extended beyond the three days after the beginning of such disability; (4) average weekly wage.

The commission found for the claimant on the first issue; for the employer on the second issue; on the third issue, that the disability did not extend beyond the waiting period; and on the fourth issue, that the average weekly wage was $22.25. And the commission disallowed the claim. The claimant testified before the commission that on May 16th, 1931, at about ten minutes to 12 at night he tried to go to the toilet and tripped over some tin and fell down on his left knee and turned over on his right knee and hit his shoulder; that a man picked him up and asked if he felt bad, and witness replied, "No, I guess I can go back to work; and I went to work and it got worse all the time, so I worked on it for two weeks"; that he got worse all the time during the two weeks he was working; that he was in pain; that Dr. O'Conner attended him for two weeks and told him what to do and he did it; that the doctor came Tuesday and told him he might go to work the next day, and witness told him his leg and shoulder was giving him a lot of pain, and the doctor said, "Go down and see Mr. Holley, and I went down and saw Mr. Holley and he told me to go to work on the seventh floor. * * * I stayed up on the seventh floor for half an hour and the pain was so great in my left knee and right arm I could not stand the pain and I told Mr. Holley, and he told me to go home"; that witness went home on a street car, and when he

got off the car near his home the pain in his arm was so great he could not hold himself up with the cane which he was using at that time; that he was picked up and carried home by two men; that Dr. O'Conner took him to Mercy Hospital, where he stayed two weeks and did not get any better; that after he went home he was attended by Dr. Lichtenberg and Dr. Seliger; that Dr. Seliger gave him a blood and throat examination and sent him to the Hebrew Hospital, where he stayed two weeks under Dr. Seliger's care; that prior to the date of the accident he worked every day, never lost a minute; that he had been working for the appellant for seven years; that he never suffered any pain in his leg and arm, was able to walk all right, walked four miles several times; that before the accident witness had a slow walk but did not stagger so far as he knew; that in his opinion he was a healthy man; that his trouble at the time of the hearing was in his left knee and right arm, so that he could not do anything; that before the accident he worked from 7 o'clock in the evening until 7.30 the next morning at forty cents an hour.

On cross-examination witness said he went to St. Joseph's Hospital three years before to be treated for his slow walk; that he was at St. Joseph's only three or four days, as he did not have money to pay; that after he left there he had no trouble walking, only a slow movement; that from that time he walked four miles any time without suffering any pain; that he was in the habit of walking from his home to the Federal Tin Company, which was four miles one way, and suffered no trouble or pain; that sometimes he walked both ways, whenever he ran short of money.

Dr. Seliger testified that he examined the claimant in September, 1931, at the request of Dr. Lichtenberg; that he obtained a history from claimant in which he stated he was feeling all right, able to work until May 16th, while working for the Federal Tin Company ((he tripped over a pile of debris and landed on both knees, twisting himself, tearing his right shoulder and back)). The witness continued with the history he obtained from claimant. Witness then stated what the neurological examination revealed. "At that time I made

impression of ataxic spastic paraplegin, meaning inability to co-ordinate his movements which causes him to walk as he does, spastic meaning stiffness. It is the stiff type of paraplegin, which means paralysis of the lower extremities. At that time I recommended him to the hospital for study." The witness then stated the various disturbances in the body that can cause these conditions, and testified that tests made at the hospital on claimant for each of these disturbances showed that they did not exist in him. (("It was then my opinion that Mr. Hoffman had been predisposed to a slow progressive degenerative disease which was lighted up and accelerated by the injury.")) It was my opinion, further, that Mr. Hoffman at the present time is permanently disabled."

On cross-examination by Mr. Hughes, the representative of the employer, the witness further described at length the condition and symptoms that he found, stating that from his examination he found no fracture, dislocation, or bone pathology shown and saw no evidence on any part of the body that was injured. Then there were the following questions and answers on cross-examination: "Q. (By Mr. Hughes) Doctor, what disease does the man have? A. He has ataxic spastic paraplegia, slowly progressive disease of the nervous system. Q. Could the condition you found in his mouth and teeth cause this condition? A. Teeth sometimes predispose to it but in my opinion it is more of a constitutional defect, ((something that has been in his nervous system which would have gone on without any manifestations if it was not for the injury. He might have gone on the rest of his life with a little drag in his walking but here we have a man working all right, walking fairly well except a little slowness and then the injury, and then the man gets to the point he cannot use his extremities any more. From what I said it is my opinion he was predisposed. He might have gone on without any serious symptoms had it not been for the injury. Q. Can you tell us, in layman's language, how this accident could have lighted this up? A. Yes, any type of injury can give you bleeding if you have a congenital defect of vessels and

then a little injury which in you or myself was not noticeable might cause this blood to come up and irritate these tracks. Q. (By Chairman Carr) What was the injury, doctor? A. I gave it in the history of the injury. I knew from history, only, that he fell over this debris, falling on the knee or shoulder and back, no unconsciousness with it. Q. The history did not tell you anything about the severity? A. No, it did not. Q. Certainly not every fall a man has, striking his knee or shoulder, would light up a thing like this? A. No, sir; it would not; severity has no place in cause or effect. The way that happens I cannot tell you but it happens. I can tell you that from past experience. Q. You are going on the history of the case as given to you by the claimant? A. Yes, and past experience, my past experience. Q. You are assuming that he had no symptoms of this disease prior to that time? A. I am assuming he had very little, if any. The only one I can get from the patient is the little slowness of gait. I think he was predisposed, I am sure he was, predisposed in the spinal cord, thinness of some of the vessels which caused them to hemorrhage easily. I might fall all day long and not get the same effect."))

On the appeal from the commission the court granted the following issue, all other issues and exceptions to issues having been withdrawn: "Was the disability of the claimant at the time of the hearing before the State Industrial Accident Commission (November 4, 1931) the result of an accidental injury arising out of and in the course of his employment by the Federal Tin Company, Incorporated?"

It appears from the docket entries: "16th June, 1932. Verdict in favor of the Plaintiff and the answer of the jury to the issue is 'yes' thereby reversing the ruling of the State Industrial Accident Commission of Maryland."

Except as may be inferred from this docket entry, it does not appear from the record that a judgment was entered on the verdict.

It is for the court and not the jury to affirm, reverse, or modify the ruling of the commission appealed from. *Schüller v. Balto. & O. R. Co.,* 137 Md. 235, 242, 112 A. 272. But

rather than send this case back, thereby causing unnecessary delay and expense, we will assume that the above-mentioned docket entry was made by order of the court and was intended to embody its judgment. The case was submitted to the jury on the record from the commission in accordance with the Act of 1931, chapter 406, amending Code (Supp. 1929), art. 101, sec. 56.

The employer filed three motions in writing:

(1) To strike out the testimony of Dr. Seliger included in the first double parenthesis in this opinion, because it is hearsay, and contrary to the testimony of claimant. There was no objection or exception to the admission of this testimony when offered before and received by the commission. The court overruled this motion. This ruling constitutes the first bill of exception.

(2) To strike ont the testimony of Dr. Seliger contained within the second double parenthesis herein, because said testimony is based upon the following assumptions of fact which are not supported by the evidence, viz.: (a) That claimant twisted himself, tearing his right shoulder and back; (b) that the accident caused bleeding from the vessels in or about the spinal cord, irritating the nerve tracks; (c) that the claimant had very little, if any, symptoms of the disease before the accident. There was no objection or exception before the commission. This motion was overruled, and the ruling is the basis of the second bill of exception.

(3) To strike out the testimony of Dr. Seliger contained within the third double parenthesis herein, for the same grounds relied on in the second exception. There was no objection or exception made or reserved before the commisson. The motion was overruled, and this constitutes the third bill of exception. The fourth exception was reserved to the ruling on the prayers, specifically to the overruling of defendant's special exception to plaintiff's prayer and the granting of said prayer and to the refusal of defendant's demurrer prayer.

The first three exceptions may be considered together.

The three motions involved in these exceptions asked the

court to strike out testimony taken before the commission and received without objections or exception.

The case of *Savage Mfg. Co. v. Magne,* 154 Md. 46, 139 A. 570, 572, was decided before the act of 1931, above referred to. Even then this court held, after discussing the liberality directed by the Workmen's Compensation Law in regard to evidence permitted, that, "without regard to the policy of the statute, it would be plainly unjustifiable to permit such an objection (that is to testimony admitted by the commission in answer to leading questions) to be successfully urged on appeal as against testimony received by the commission in response to interrogatories which were not then challenged." It will be at once seen that what was there said, at a time when on appeal from the commission the parties could produce witnesses before the jury and were not confined to testimony contained in the record, and could thus prevent injury caused by surprise in striking out testimony received by the commission without objection, has much more force at the present time. This case illustrates the unfairness that would result from the adoption of a different practice. It is manifest from the reading of all the testimony of Dr. Seliger that it was offered, not for the purpose of proving how the accident happened or any physical facts immediately connected with the happening, but to obtain the opinion of the doctor of the condition of the claimant at the time of the hearing before the commission and how far, if at all, that condition was affected by the accident. We cannot tell from the testimony in the record just which of the facts he gives as the basis of his opinion were narrated to him by the claimant, and which were his deductions from such narration and his own observations. For instance, in the first exception the complaint is that the doctor gives as part of the basis of his opinion the fact, assumed by appellant to have been told the doctor by claimant, that while working for the Federal Tin Company "he tripped on a pile of debris and landed on both knees, twisting himself, tearing his right shoulder and back," whereas claimant's testimony in the record is that "he tripped on scrap tin

that was on the floor and I hurt my knees and arm." The appellant says the doctor's statement is the only evidence in the record with respect to any "twisting" or "tearing his right shoulder and back," and therefore that must have been told the doctor by claimant, and is therefore hearsay evidence, and, being a narrative of past events, not admissible. But it may well be that claimant told the doctor just what he (claimant) said in his testimony, and that the doctor concluded that such a fall, in the conditions he observed, had caused the "twisting" and the "tearing his right shoulder and back"; and that the doctor did not mean to give that as a statement to him by the claimant. The point here is that, assuming for the sake of the argument, without so deciding, that the objection made by appellant was valid, it came too late. When the question was raised, it was no longer possible either to obtain an explanation from that witness or to supplement his testimony.

In *Kauffman Construction Co. v. Griffith,* 154 Md. 55, 60, 139 A. 548, 550, a directed verdict was asked on the ground that the only evidence as to the injury was hearsay, but it was in without objection. In an opinion by Judge Sloan we said: "It is hearsay, in without objection, and must be accepted as any other evidence of the fact of the alleged injury."

It is true that in *Waddell George's Creek Co. v. Chisholm,* 163 Md. 49, 161 A. 276, it was said that, when a jury is asked to determine the facts, some hearsay might have to be excluded from their consideration as unworthy of reliance as a basis of adjudication. But that was suggested as a remote possibility, and it was not done in that case. In our opinion it could have no application to the facts of this case.

In the second and third exceptions, the objection is that the opinion of the witness was based on assumed facts of which there was no evidence. But it seems clear to us that the facts alleged to have been assumed were the deductions of the witness from the facts testified to and from his own observations. Here again it would have been manifestly unfair, if there was any question as to what the witness

meant, to permit the question to be raised when it was no longer possible to explain. We find no error in the rulings on these exceptions.

The fourth exception is to the granting of claimant's prayer, to the overruling of employer's special exception thereto, and to the refusal of employer's demurrer prayer.

Claimant's prayer instructed the jury that, if they found that claimant prior to the date of the accident was suffering or predisposed to a progressive disease of the nervous system, and that he accidentally fell in the course of his employment, and that said fall lighted up or accelerated the aforesaid disease, so as to cause the disability as of the time of the hearing before the commission to incapacitate him from performing the regular duties of his employment with the Federal Tin Company, then their answer to that issue should be "Yes." Appellant contends that the prayer should have been modified by inserting the words "which would not otherwise have occurred" after the word "Company," on the last line of the prayer. We think the prayer as granted means that, and that the additional words would have been surplusage. Because this court in *Dickson v. Beasley,* 146 Md. 568, 126 A. 907, used this expression in its opinion does not mean that it was necessary to use it in the prayer, if the prayer without it meant the same thing. There was no criticism of the prayer in that case because it did not contain these words.

The special exception was on the ground that "there is no evidence in the case legally sufficient to prove that the 'fall lighted up or accelerated the disease' which the plaintiff (employee) had before the accident." Our holding that the court properly refused to strike out Dr. Seliger's opinion disposes of the special exception. It also disposes of the exception to the refusal of the demurrer prayer, even if there were no other testimony tending to support appellee's claim. *Bramble v. Shields,* 146 Md. 494, 127 A. 44; *Dickson v. Beasley, supra.*

*Judgment affirmed, with costs.*

Parke, J., dissents.