PENNSYLVANIA RAILROAD COMPANY *v.*
QUALITY PRODUCTS, INCORPORATED

[No. 46, October Term, 1936.]

*Decided January 13th, 1937.*

*Frederick W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

MITCHELL, J., delivered the opinion of the Court.

This is a suit by the Pennsylvania Railroad Company against Quality Products, Inc., for the recovery of a sum

of money alleged to be the difference between the actual amount of a freight bill rendered and paid, and a higher amount, claimed to have been based on the correct rate, but which, through error, was not charged. The case was tried by jury, resulting in a verdict for the defendant, from a judgment on which this appeal is taken.

The shipment in question was a carload of oranges; the point of origin being Bartow, Florida, and the destination Salisbury, Maryland. The route and manner of shipment, which is conceded, was by Seaboard Air Line to Savannah, Georgia, thence by Atlantic Coast Line to Pinner's Point, Virginia, and by Pennsylvania Railroad to the point of delivery.

The evidence, as contained in the record, cannot be said to be conflicting, and apparently indicates the following circumstances and facts: In March, 1931, Dixon Groves, Inc., a Florida enterprise, had occasion to furnish a carload of oranges to Quality Products, Inc., the appellee, at Salisbury, and purchased the same from George V. Leonard & Co. (or "F. M. Leonard & Co.") A telegram signed "George V. Leonard" was received by Ben F. Conner, Inc., directing the shipment of a car of oranges to Quality Products at Salisbury, "Route, Coast Line, Pinner's Point, Penna, Dixon Groves, shippers." Thereupon Ben F. Conner, Inc., arranged with the agent of the Seaboard Air Line at Bartow for the shipping of a carload of oranges from the "H. C. Conner Estate," in the name of Dixon Groves, Inc., to the consignee at Salisbury. The agent called the shipper's attention to the fact that the routing was arbitrary, and contrary to that permitted as a commodity shipment in the tariffs effective at that time; but, upon the shipper's insistence, the car was put on its way, routed as ordered.

In the absence of special instructions, the car would have been routed by Seaboard all the way to Norfolk, and thence by Pennsylvania Railroad to Salisbury, upon which the tariff rate was $1.02 per cwt., making a total charge of $330.48. The special routing requested in this case, requiring a portion of the haul to be over the Atlantic

Coast Line, necessitated a higher tariff rate of $2.03 per cwt., totaling $635.39.

The car arrived at Salisbury, and the shipment, upon delivery, was billed under the lesser rate, and paid by the consignee. Later, the appellant's auditor discovered the alleged error, and a demand for the payment of the difference of $304.91 was made upon the consignee, who requested the appellant to present the same to the consignor, Dixon Groves, Inc. Failing to obtain settlement, the appellant brought suit.

At the trial, ten exceptions were reserved to rulings on evidence, and one to the court's action upon the prayers, three of which were offered by the appellant, the appellee presenting none.

The first exception is to the admission of the telegram from Leonard to Conner. Previous to its offer, Conner's secretary had testified, without objection, to its receipt, and substantially to most of its contents, the remainder being already in evidence through the contents of the bill of lading, which likewise met with no objection. As the telegram merely corroborated what was then before the jury without objection, its admission, whether proper or not, did the appellant no harm.

The second exception is to the overruling of an objection to a question on cross-examination of an employee of the appellant's accounting department, which asked what was the tariff rate from Bartow to Savannah. The witness' answer was not directly responsive, but was a repetition of a general statement previously made without objection.

The subject of the third exception was the overruling of objection to an inquiry of the same witness as to how much of the $2.03 rate applied to each of the three hauls making up the entire trip. As the witness' answer consisted only of the statement that he did not know without his office records, it forms no basis for exception.

The fourth exception relates to the question put to the same witness, as to what the rate would have been if the first leg of the shipment had been over the Atlantic Coast Line, instead of the Seaboard. He replied that he

was not prepared to answer that inquiry, but thought it would have been $1.02. Admittedly, this was not the route of the car in question, and the answer was harmless.

The fifth and sixth exceptions relate to questions which elicited substantially the answer, "I don't know," and require no comment.

By the seventh exception the appellant questions the ruling permitting the same witness to answer an inquiry as to whether I. C. C. Tariff No. 727 provides certain specified rates for each leg of the route covered in this case, totaling $1.43 per cwt. He replied in substance that it provided for a rate of $1.02 if the routing was by Seaboard all the way to Norfolk. This is similar to the fourth exception.

The eighth exception arose from the court permitting the president of Dixon Groves, Inc., to answer a question whether, as representing the defendant, or as an officer of Dixon Groves, he had given or authorized any instruction to Miss Schupp (secretary of Ben F. Conner, Inc.) relative to the car in question. His answer was, "No," and was only conclusive as far as it went. It did not preclude such instruction coming from other officials of Dixon Groves, or being directed to other employees of Ben F. Conner, Inc.

The same witness was asked from whom he bought this carload in Florida; and answered, over objection and exception, "F. M. Leonard & Co., of which George Leonard was representative. The same name as signed to the telegram, George V. Leonard & Co." As this witness was the president of the corporation in whose name the shipment was made, we see no objection to such a question.

The tenth exception is to the refusal of the court to strike out certain testimony as to other freight rates; and as this testimony formed the basis of exceptions already passed upon, the ruling in this instance must be held correct.

By the eleventh exception the correctness of the court's ruling in rejecting the appellant's first and second prayers is challenged.

The single instruction given the jury was the granted third prayer of the appellant.

The first prayer begins by stating unequivocally what the "uncontradicted evidence" is, reciting facts as to the origin and course of the shipment, and circumstances connected therewith; and concludes by predicating a verdict for the plaintiff upon a finding to be made by the jury that the correct freight bill should have been $635.39 and that only $330.48 was paid. Under this prayer, if granted, the jury were at liberty to find a verdict either for the plaintiff for $304.91, or for the defendant. This prayer is substantially the same as the granted third prayer; the chief difference being that by the latter the jury were left to find the facts stated in the first prayer to be "uncontradicted," and the amounts were described rather than set out in figures. Objection might be made to that portion of the first prayer which instructs the jury that certain evidence is "uncontradicted"; supported by the early case of *Inloes v. American Exch. Bank,* 11 Md. 173, holding that "even where the proof is all on one side, the finding of the facts must be left to the jury." In any event, the appellant cannot complain, because, as indicated, the third prayer fully and fairly presented its theory of the case.

The second prayer states the legal duty of the appellant in respect to charging and collecting freight rates; and concludes by leaving to the jury certain facts to find, similar to some of those set out in the third prayer. As the latter portion of this prayer was sufficiently duplicated in that which was granted, we will consider only the necessity or propriety of informing the jury that the railroad was bound, by federal law, to charge and collect certain prescribed fees. The rates promulgated by the Interstate Commerce Commission, a recognized governmental agency, were already a part of the evidence in the case. The amount of the freight bill, as it should have been rendered, under the appellant's theory of the case, had been demonstrated to the jury from these tariff schedules. The fact that a lesser sum, representing the

amount of the bill actually rendered, had been paid and receipted for, was a matter of concession in the case.

The apparent purpose of an instruction as to the legal right of a railroad to insist upon such a claim as forms the basis of this action would be to justify its right to sue for the difference, and to negative a possible layman's impression that a receipted bill, despite evidence to the contrary, is a full settlement. The right to maintain this suit was clearly evident to the jury, from the fact that it was in process of trial and actually submitted to them for determination in favor of either party. Furthermore, if the receipt had been conclusive against the railroad, evidence to the contrary would not have been permitted to be introduced. Such evidence, it may be remarked, although offered to vary a written instrument, is properly admitted in the case of receipts for money paid; this being an exception to the general rule. *Cramer v. Shriner*, 18 Md. 140.

Without this second prayer, therefore, the appellant stood before the jury in exactly the same status as a merchant suing to collect the difference between a bill for goods which he had erroneously undercalculated, which had been paid and receipted for, and the higher amount of a corrected bill. Viewed in this aspect, it is easily seen that no harm was done the appellant by the rejection of this prayer.

In our opinion, the instruction given to the jury in the only granted prayer was correct, in that it left to them their full prerogatives as a fact finding body, and did not assume the facts as they were submitted in the plaintiff's first prayer, which was rejected. They might have found a verdict for the plaintiff, under the facts in the case; but it is equally true that, under the same facts, it was within their province to render the verdict which they did render. In the early case of *Charleston Ins. Co. v. Corner*, 2 Gill, 410, 427, it is said: "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance, that it is all on one side, does not authorize

the court to direct the jury, that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right, to weigh the credibility of evidence." This principle has long been followed by this court, and is the settled law of this state. *Boyd v. McCann,* 10 Md. 118; *Calvert Bank v. Katz & Co.,* 102 Md. 56, 61, A. 411; *Lemp Brewing Co. v. Mantz,* 120 Md. 176, 87 A. 814; *Nelson v. Jacques,* 160 Md. 197, 153 A. 20; *Smith v. Whitman,* 159 Md. 478, 150 A. 856.

The appellant argues that, under the facts as they were developed before the jury, there was but one verdict that could have been rendered, to wit, a verdict for the plaintiff. However, in each of its proposed instructions, it was content to leave at least some facts for decision by the jury, upon the determination of which the ultimate finding was to depend. Having so chosen, and believing the verdict contrary to the evidence, its sole and obvious recourse was to seek redress by a motion for a new trial. And this it did; from the denial of which motion, of course, no appeal lies.

What we have said is not in conflict with the recognized principle as to the right of a trial court to instruct in favor of either the plaintiff or defendant as to the legal insufficiency of evidence to support an issue to which it is directed. 2 *Poe's Pl. & Pr.* (6th Ed.) sec. 297; *Lewin v. Uzuber,* 65 Md. 341, 346, 4 A. 285; *Sandruck v. Wilson,* 117 Md. 624, 84 A. 54.

Finding no ground for reversal of the judgment below, the same must be affirmed.

*Judgment affirmed, with costs to the appellee.*