# LEAH SPENCE *v.* BETHLEHEM STEEL COMPANY
[No. 91, October Term, 1937.]

540

*Decided February 3rd, 1938.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Paul Berman* and *Anthony Purcell,* with whom were *Isidore E. Levin, Theodore B. Berman* and *Philip V. Hendelberg,* on the brief, for the appellant.

*William L. Marbury, Jr.,* and *Julian de Bruyn Kops, Jr.,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On May 5th, 1936, George Edward Spence, a West Indian negro, who had been employed for several years at the Sparrows Point mills of the Bethlehem Steel Company, after eating his breakfast, according to the testimony, then in good health, went to his work, which was that of a rigger, one of a crew erecting new equipment. He came home from work, without having touched his lunch, very ill, and one week later died of lobar pneumonia.

A claim for compensation was filed by the widow, Leah Spence, with the State Industrial Accident Commission, on June 5th, 1936, wherein she stated that her husband had died on May 12th, 1936, as the result of an injury sustained by him on May 5th, 1936, while in the employ of the Bethlehem Steel Company at Sparrows Point. Accompanying the claim was the report of the attending

physician, Dr. C. Mansell Lawrence, who, in answer to question 5: "State in patient's own words where and how accident occurred," said, "Overcome by gas while working at Sparrows Point." Question 6: "Give accurate description of nature and extent of injury and state your objective findings." A. "Lobar pneumonia due to exposure to a poisonous gas while working." Question 8: "Is accident above referred to the only cause of patient's condition?" A. "Yes." And that the patient was not "suffering from any disease of the heart, lungs, brain, kidneys, blood, vascular system or any other disabling condition not due to this accident."

The only evidence in the record of the cause of the alleged accident were the hearsay statements of the deceased to his wife, when he returned home on May 5th, and to the physician, who did not see him until May 10th, and the conclusions of the physician. No evidence was offered by the employer either to refute the charge or to show that the conditions under which the man worked were usual or customary.

The testimony taken before the commission was read at the trial, on appeal, and the questions on the admissibility of evidence arose there. The claimant contends that, unless questions are objected to before the commission, they cannot be objected to on appeal, and cites *Moller Motor Car Co. v. Unger*, 166 Md. 198, 170 A. 777, *Federal Tin Co. v. Hoffman*, 164 Md. 431, 165 A. 323, and *Savage Mfg. Co. v. Magne*, 154 Md. 46, 139 A. 570, as authorities for this contention. That was not the question decided in *Savage Mfg. Co. v. Magne, supra*, 154 Md. 46, at pages 52, 53, 139 A. 570, 572, the objection on appeal there being whether the commission could ask or allow leading questions even over objections made at the time, and this court held that the mere fact that a question asked before the commission was leading did not make it objectionable, but in that case it was said, citing *Standard Gas Equipment Corp. v. Baldwin*, 152 Md. 321, 136 A. 644, "that questions as to the admissibility of any testimony contained in the record from the

commission could be raised and determined in the trial court." The law in effect then was section 56 of article 101 of the Code, as enacted by the Act of 1927, ch. 587 (Code [Supp. 1929] art. 101, sec. 56). Section 56 was so amended by the Acts of 1931, ch. 406, and 1933, ch. 508, as to provide that appeals should only be heard on the record from the commission, with no right to introduce original evidence, and these acts were later repealed and re-enacted by the Act of 1935, ch. 545, now section 56, article 101, of Flack's Supplement to the Code. In the meantime the cases of *Federal Tin Co. v. Hoffman, supra,* and *Moller Motor Car Co. v. Unger, supra,* came to this court, and it was held that objections to the admissibility of evidence must be made before the commission in order to be available on appeal. On this question the last two cases cited are not authority, as the restoration of the Act of 1927, ch. 587, also restores the ruling in *Standard Gas Equipment Corp. v. Baldwin,* 152 Md. 321, 136 A. 644, that objections to questions asked before the commission may be made on appeal to the trial court.

The appeal was heard on the record made before the commission.

The widow, Leah Spence, testified: "When he came home he looked black and blue, pain in his face and his eyes were blue and his lips, and I said Ed, what's wrong, you look so funny, and he says"—Here an objection to the reading of the remainder of the answer was made by employer's counsel, overruled and exception noted, and witness continued, "I been sick since I been on the job, I inhaled some gas and I been sick and I said, sit down, and he sat down." A motion to strike out this part of the answer was also overruled and exception noted. She was then asked, "Did he say when he inhaled the gas? A. He said after he started to work that morning." "Q. Did he tell you how he was feeling? A. He said his head started to hurt first and then he gets sick in his chest and felt worse and worse." She put him to bed, where he remained until his death seven days later. She suggested sending for a doctor, but he said he wanted his

own doctor from the Point, that is, his employer's doctor. Word was attempted to be sent the next day through one named Taylor, who formerly worked for the same employer. There is no evidence whether Taylor ever took the message to the employer. Spence kept getting worse, and on Sunday, five days after he became ill, Dr. Lawrence was called. On May 11th the employee sent word to the employer of his disability by one Thompson, who returned the 12th, with a blank headed "Doctor's certificate of Disability," but the patient, in the meantime, had died.

Dr. Lawrence, asked what history he got, said: "The history I got, as soon as I got in there he told me he was poisoned and I asked how, and he said working at Sparrows Point, he inhaled poisonous gas and was very sick." A motion by the employer to strike out the answer was overruled and exception noted. He was then asked: "Did he tell you where the gas was coming from?" admitted over objection and exception, to which he answered: "He said he was working in burning tar * * * Working in it I understood * * * He said he became very ill and vomited and was sick at the stomach and could not eat and that he had brought his dinner home and had been in bed ever since. * * * He was a very sick man, his face and lips discolored, and he had definite pneumonia. In both lungs. * * * My diagnosis was lobar pneumonia. Due to exposure. Q. To this gas that you spoke of?" (Objection by employer overruled and excepted to.) "Due to exposure to this gas that he spoke of. Q. As I understand it, he died of lobar pneumonia which, in your opinion, was induced by this poisonous gas of which he told you? (Objection overruled, and exception.) A. Yes. Q. Doctor, this pneumonia that you saw, was that the ordinary pneumonia? A. It was not. Q. Wherein did it differ from ordinary pneumonia? A. Because the history of the case as given by the patient, it did not start like ordinary pneumonia, there was no initial chill. Q. Did he have the appearance of a person with the usual pneumonia. A. No. Q. Wherein did his

appearance differ? A. In the discoloration of the face. Q. What did you attribute that discoloration to? A. The poisonous gas. Q. In your opinion would it? (Objected to.) Q. (by Commissioner Crothers). Could you tell whether it would or would not without knowing the kind of gas he was poisoned with? A. Not definitely, and if I might say this, I was making a definite effort to get the man to the hospital, so we could be certain of the condition, but he died before I could get him a bed. The bed was vacant on Wednesday, and he died on Tuesday and I saw him on Sunday."

The record says: "Objection sustained because the witness does not know what kind of gas it was," and exception noted. On cross-examination said he was not a specialist in the effect of poisonous gas on the human system, nor whether poisonous gas comes from burning tar. Asked whether poisonous gas can cause lobar pneumonia, he said, "It can," but "You can have lobar pneumonia without that," and "People have died of it without having it caused by poisonous gas."

The Accident Commission, on the issues submitted, found against the claimant, who took an appeal to the Baltimore City Court, which remanded the case to the commission for a finding on certain issues. The commission reaffirmed its finding disallowing compensation. The case now comes to this court on an appeal from the City Court on four prayers for an instructed verdict in favor of the employer, which submit every question involved, except one on the admissibility of evidence.

At the conclusion of the reading of the testimony taken before the commission, the employer submitted four prayers for an instructed verdict, the "A" prayer, that there is no legally sufficient evidence that George Edward Spence died as the result of an accidental injury arising out of and sustained in the course of his employment; "B," that he did not give notice of his alleged injury within ten days after its occurrence; "C" that there was no legally sufficient evidence to show any sufficient excuse for the failure to give such notice; "D," that

the undisputed evidence is that the employer was prejudiced by the failure to given such notice.

The evidence that the alleged injury arose out of and in the course of employment is derived from the hearsay evidence of the deceased employee, and, as in the opinion of this court the evidence is legally sufficient for submission to the jury, the judgment appealed from will be reversed and the case remanded for a new trial.

As will be observed from the testimony already quoted, the evidence upon which the claimant relies was admitted over the objections of the employer; on a retrial, the question of its admissibility will arise again, and, for this reason, should be considered on this appeal. *Lycoming Fire Insurance Co. v. Langley*, 62 Md. 196, 215; *Shartzer v. Mountain Lake Park Assn.*, 86 Md. 335, 338, 37 A. 786; *McElroy v. John Hancock Mut. Life Ins. Co.*, 88 Md. 137, 145, 41 A. 112; *Rubin v. Leosatis,* 165 Md. 36, 43, 166 A. 428.

The important questions on this appeal are whether the statements and declarations of the employee as to how he was suddenly stricken ill are within the exceptions to the hearsay rule, so as to make them admissible, and, if within the exceptions, do they furnish a sufficient foundation for the opinion of his physician that the fumes or gas from burning tar did produce such fatal result. And, assuming this evidence to be legally sufficient, there is the question as to whether the alleged injury arose out of and in the course of his employment.

One of the generally accepted exceptions to the hearsay rule is the testimony of physicians and surgeons, but this is not without its limitations. "It is generally accepted that medical or surgical testimony is not inadmissible because, like all such conclusions, it is founded in part on the patient's own statement of symptoms, but such testimony founded on hearsay information from others would be excluded, though where that person is a nurse or other attendant, it would seem that the same necessity and propriety demanded the admission." 1 *Greenleaf on Evidence* (16th Ed.) sec. 430-1; *Geiselman v. Schmidt,*

106 Md. 580, 584, 68 A. 202. The weight of authority, however, seems to be that the statements of the patient as to the cause of his condition or injury would not be admissible. *Greenleaf* says (section 162 b) "The representation by a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time, are received as original evidence; if made to a medical attendant, they are of greater weight as evidence; but, if made to any other person, they are not on that account rejected. (As to this, certain discriminations must be made. Statements as to the circumstances of an injury, * * * or the nature of any injury are not within the exception, which covers only statements of an internal condition)." But 22 *C. J.* 269, sec. 270, qualifies this statement by saying, "But where a statement to a physician, although narrative in character, relates to a matter which it is necessary or proper for him to know in order that he may accurately diagnose and properly treat the case, it may be shown." But see *Damm v. State,* 128 Md. 665, 667, 97 A. 645. In *State v. Gedicke,* 43 N. J. L. 86, 88, this was said: "It is an exception to the usual role excluding hearsay evidence, and is founded on the necessity of learning from the patient herself facts within her own knowledge, which the physician should know to form an intelligent and accurate opinion of her present health and situation." See, also, *Dundas v. Lansing,* 75 Mich. 499, 502, 42 N. W. 1011; *Merkle v. Bennington Township,* 58 Mich. 156, 160, 24 N. W. 776; *Omberg v. U. S. Mutual Acc. Assn.,* 101 Ky. 303, 309, 40 S. W. 909; *Northern Pac. R. Co. v. Urlin,* 158 U. S. 271, 273, 15 S. Ct. 840, 39 L. Ed. 977, 981. *Travellers' Insurance Co. v. Mosley,* 8 Wall. 397, 75 U. S. 397, 19 L. Ed. 437, was a suit on an accident insurance policy, in which the statement of the insured, made to his wife and son shortly after an injury as to its cause, was received as evidence of the fact. There was a dissenting opinion by Mr. Justice Clifford, in which Mr. Justice Nelson concurred. The rule generally is that the statements must be so nearly related to the injury in point of time as to

make the exclamations or declarations part of the *res gestae*. *Delmar v. Venables*, 125 Md. 471, 479, 94 A. 89; *Jones on Evidence*, (3rd Ed.) secs. 344-349.

This court has allowed more latitude in the admission of statements in compensation cases of one injured, where death ensued, as to the cause of injury. In *Standard Oil Co. v. Mealey*, 147 Md. 249, 127 A. 850, the only evidence of injury was a statement made by Mealey to his wife and others, and this court held that the admission of this hearsay evidence and the refusal of a prayer for a directed verdict because of insufficient evidence was not reversible error. In *Standard Gas Equipment Corp. v. Baldwin*, 152 Md. 321, 136 A. 644, 646, the record of the health department of Baltimore, the information for which was furnished by the widow, claimant, gave the cause of death as "valvular heart disease. Contributory —burns on body accidental resulting from fall (secondary) on hot metal," of which we said "This evidence had no probative value. It was not only hearsay, but lacked the *indicia* of reliability, which, under some circumstances justifies the admission of hearsay testimony in these cases." In *Kauffman Construction Co. v. Griffith*, 154 Md. 55, 139 A. 548, the only evidence of injury was from statements made by the employee, which were not objected to, and therefore had all the force of direct evidence. *Slingluff v. Builders' Supply Co.*, 89 Md. 557, 43 A. 759; *Struth v. Decker*, 100 Md. 368, 375, 59 A. 727. *Bethlehem Steel Co. v. Traylor*, 158 Md. 116, 148 A. 246, 248, was a case wherein the question was whether the pneumonia which was the immediate cause of Traylor's death resulted from asphyxiation by carbon monoxide gas by which he was overcome five days before at the employer's plant. His wife, claimant, testified that her husband had told her several times prior to his final illness of having been gassed, and that the last day he worked he came home very ill and "said he was suffering from the effects of gas." A neighbor testified that he told her on this occasion that "he had pains in his chest caused by gas." There was other evidence of workmen

who testified to the conditions under which Traylor worked. The same statement was made by Traylor to his physician. There was evidence of fellow workmen that Traylor had, on several occasions, been affected by gas, so that there was independent evidence of eyewitnesses to the injury alleged, and "the considerations which influenced the ruling in *Standard Oil Co. v. Mealey, supra,* do not apply with equal force to the circumstances of this case," and the admission of the statements excepted to did not present "an adequate ground for a reversal of the judgment."

In *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276, hearsay statements of the wife and a companion were admitted over objection, but the facts testified to by them were merely the corroboration of the testimony of witnesses working with Chisholm at the time of the alleged accident. In *Horn Ice Cream Co. v. Yost,* 164 Md. 24, 163 A. 823, 826, the hearsay statements of the wife as to the alleged injury were supported by witnesses who saw what the mother testified to as having been told by the son. In this case it was said: "That there must be limits to the discretion which the commissioners may exercise in admitting or rejecting evidence appears inevitable, otherwise the whole administration of the article would lack the certainty which is so essential an element of our jurisprudence, and the problem has been to formulate working rules which will not violate the spirit of informality and liberality which is inherent in the article, but which will prevent the introduction of evidence which under any system of law should have little or no probative force."

This court has not said in any of the cases cited that the safeguards against the admission generally of hearsay evidence in compensation cases should be disregarded, but that it should be received with great caution, and so far has only approved the admission of statements of employees who, because of their intervening deaths, could not testify themselves, and then their hearsay statements have only been admitted when they have been made so

promptly after the alleged injury and were so closely related to the facts and physical conditions as to give them substantial probative value. This may be a very indefinite guide to the commission and to trial courts, to which the appeals first come, but we are admonished by section 10 of article 101, that "the Commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act [article]," and it was this provision of the statute law that actuated the decision in *Standard Oil Co. v. Mealey; supra.* See *Perry v. Industrial Accident Commission,* 180 Cal. 497, 181 P. 788.

If the statement of the employee, as to the cause of his condition, is to be accepted, then it was an accidental injury, compensable if arising out of and in the scope of his employment, "and its accidental nature is not lost by calling the consequential results a disease." *Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 368, 380, 128 A. 635, 639; *Bethlehem Steel Co. v. Traylor,* 158 Md. 116, 124, 148 A. 246.

On the authority of *Standard Oil Company v. Mealey, supra,* followed by this court in the other cases here cited, we hold the questions objected to by the employer as hearsay admissible.

The question then is, whether the statements so made by the employee of inhaling gas is sufficient evidence to go to the jury of that as the cause of the disease resulting in death. The physician, in his report to the Accident Commission, gave the cause of death as "Lobar pneumonia due to exposure to a poisonous gas while working." On the witness stand he said, "My diagnosis was lobar pneumonia. Due to exposure to this gas that he spoke of." The patient did not "have the appearance of a person with usual pneumonia." His appearance differed "in the discoloration of the face," which he attributed to "the

poisonous gas." On cross-examination, he said he was not a specialist in the effect of poisonous gas on the human system and did not know whether poisonous gas comes from burning tar, but he was the attending physician and as such could testify and make his diagnosis from personal examination and history of the case; that poisonous gas can cause lobar pneumonia, though "People have died of it without having it caused by poisonous gas." There was another fact in evidence, not hearsay, and it was that Spence had gone to work in the morning in apparent good health, and later (the record does not show how much) came home so ill that his wife had to help him upstairs and to bed, which he never left "until the undertaker took him out." The patient, in the history of the case, told the physician "he was poisoned, and I asked him how and he said working at Sparrows Point, he inhaled poisonous gas and was very sick," so that it was not illogical for him to ascribe the sudden, unexpected, change in his condition to this accidental cause (*Victory Sparkler & Specialty Co. v. Francks, supra*), though the weight of his evidence might have been weakened by the statement that lobar pneumonia might have another cause, but it would not strike his diagnosis from the record. This opinion or diagnosis is no more speculative than that of the attending physician in *Standard Oil Co. v. Mealey, supra,* who testified that "he felt, taking the report of injury as true, that it did have something to do with increasing the rapidity of the thing," and "added that this lympho-sarcoma [the immediate cause of death] could have developed if the man had not had any injury." In *Moller Motor Car Co. v. Unger,* 166 Md. 198, 207, 170 A. 777, 780, the attending physician "Dr. Campbell, was unable to say positively what was the cause of the cerebral hemorrhage which caused Wolf's death; but he did testify that the accident could have been the cause of the illness which he found, and he further said he knew of no intervening cause, although he attended him constantly after his first visit; and that the man grew steadily worse until his death." The contention was made that the evidence was inadmissible

because wholly speculative, of which this court said: "That position would require us to say that, in spite of a known and sufficient cause, recovery would be defeated by a mere speculative possibility not based on proof of the actual existence of any exciting cause." We, therefore, hold that the evidence of the physician, Dr. Lawrence, was legally sufficient for submission to the jury as to the cause of the disease from which the patient died.

This leaves the other important question, Did the alleged injury arise out of and in the course of employment? Spence left his home in the morning, as he had done for years, with his dinner pail, with which he returned untouched. Arriving home he said to his wife, "I been sick on the job, I inhaled some gas and I been sick and I said sit down and he sat down." His wife did not know "in what department of the mill he was working when he inhaled the gas." His job required him to work on new equipment, which might have carried him anywhere in the plant. If there is any inference to be drawn from even this meager evidence, it is that, if he was injured, it was while he was engaged in work he was hired to do, if he was at work at all. *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.,* 164 Md. 671, 680, 166 A. 39; *Standard Oil Co. v. Mealey, supra.*

The employer's B, C, and D prayers for instructed answers in its favor on issues 2, 3, and 4, which were granted, decided as a matter of law that George Edward Spence did not give the ten days' notice of injury, that there was no sufficient reason shown for the failure to give such notice, and the failure to give such notice should not be excused, and "that the employer has been prejudiced by the failure of George Edward Spence to give notice of his alleged injury within ten days thereafter."

Section 38 of article 101 of the Code (1935 Supp.) provides that "Notice, in writing or otherwise, of any injury for which compensation is payable under this Article shall be given to the employer within ten days after the accident, and also in case of the death of the employee resulting from such injury, within thirty days after such death. * * * The failure to give such notice,

unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State Accident Fund, Insurance Company, or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this Article, provided, however, that the burden of proving that it or he has been prejudiced by such failure on the part of the employee or by delay in giving such notice shall be upon the State Accident Fund, Insurance Company, or employer, as the case may be."

The employee, Spence, had ten days, or until May 15th, to give the notice, and if he had filed it on that day he would have been within the terms of the statute. When the ten days were up he had already been dead three days. The prayers and the issues say that he was in default because he had not given the notice. This claim is not the employee's for injuries sustained, but of his widow, who did file her claim for compensation within the thirty-day period allowed, so that there was nothing to excuse. Then too the action of the commission with respect to the notice is appealable. *Union Shipbuilding Co. v. Praviewski*, 156 Md. 412, 144 A. 339.

There is another reason why a prayer for a directed answer to an issue submitting the question of a belated notice should not be approved, and that is that the statute expressly places the burden on "the State Accident Fund, insurance company, or employer, as the case may be." It has been often decided by this court that a verdict cannot be instructed in favor of a litigant who carries the burden of proving the fact. See *Pennsylvania R. Co. v. Quality Products, Inc.*, 171 Md. 291, 298, 189 A. 200, and the cases there cited. The same principle applies to an answer on such issues of belated notice in a compensation case as to an instructed verdict for a plaintiff in a suit at law.

For the reasons here assigned, the order appealed from will be reversed, and the case remanded for trial.

> *Order reversed, with costs, and case remanded for trial.*